No. 24-10803

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

JACQUELINE JONES
Plaintiff-Appellant

v.

CITY OF DALLAS
Defendant-Appellee

---

On Appeal from the United States District Court for the
Northern District of Texas-Dallas Division
Cause No. 3:22-cv-1477

---

BRIEF OF APPELLANT

---

JOHN. H. CROUCH, IV
State Bar No. 00783906
KILGORE & KILGORE, PLLC
3141 Hood Street, Suite 500
Dallas, Texas 75219
(214) 969-9099 – Telephone
(214) 379-0844 – Facsimile
jhc@kilgorelaw.com

**ATTORNEYS FOR PLAINTIFF-
APPELLANT JACQUELINE JONES**

## <u>CERTIFICATE OF INTERESTED PERSONS</u>

Plaintiff-Appellant hereby certifies that the following list of persons have an interest in the outcome of this case. These representations are made in order that the Justices of this Court may evaluate possible disqualification or other recusal:

Plaintiff-Appellant:           Jacqueline Jones

Counsel for Plaintiff-Appellant:    John H. Crouch, IV
Kilgore & Kilgore, LLPC
3141 Hood St., Suite 500
Dallas, Texas 75219

Defendant-Appellee:         City of Dallas

Counsel for Defendants-Appellees:    Sarah E. Mendola, Executive Assistant City Attorney
sarah.mendola@dallas.gov
Nicholas Palmer
nicholas.palmer@dallas.gov
City Attorney's Office
1500 Marilla Street, Room 7D North
Dallas, Texas 75201

                                       /s/ John H. Crouch, IV
                                    John H. Crouch, IV

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff-Appellant Jacqueline Jones would show that because the legal issues presented with respect to Appellant's appeal claims are significant and the factual issues complex, oral argument is requested.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS ......................................... ii

STATEMENT REGARDING ORAL ARGUMENT ........................................ iii

TABLE OF CONTENTS.......................................................iv

TABLE OF AUTHORITIES ....................................................... vii

I.      STATEMENT OF JURISDICTION ......................................1

II.     STATEMENT OF ISSUES PRESENTED FOR REVIEW.........................2

III.    STATEMENT OF THE CASE ...........................................3

        A.      Plaintiff's Background ..................................3

        B.      The Prior Lawsuit.......................................3

        C.      Previous Accommodations.................................3

        D.      Contract Solutions Specialist ..........................4

        E.      Loss of Accommodations.................................5

        F.      Requests for Accommodations.............................6

        G.      Request to Work from Home ..............................6

        H.      Further Complaints of Harassment .......................7

        I.      First Injury from Failure to Accommodate ...............7

        J.      HR Investigation Commences.............................8

        K.      Second Chemical Injury .................................8

        L.      HR Confirmed Johnson's Abusive Behavior................8

        M.      The Requested Accommodations Were Reasonable ...........10

        N.      Termination and Celebration............................11

        O.      Crethers Disputes Monitoring Requirements..............11

        P.      Failure to Accommodate Hurt Performance ...............12

Q.    EEOC Process ..................................................................12

IV.    SUMMARY OF THE ARGUMENT ..........................................12

V.    ARGUMENT ...................................................................13

Issue No. 1: Jones Exhausted Administrative Remedies
Under Title VII...................................................13
A. Standard of Review...........................................17
B. Jones Exhausted Administrative Remedies........................14

Issue No. 2: Jones Exhausted Administrative Remedies under the ADA ....18
A. Standard of Review...........................................18
B. Jones Exhausted Administrative Remedies under the AD..18

Issue No. 3: The Trial Court Erred in Granting Summary Judgment Against
Jones on Her Pay Disparity Claim ............................19
A. Standard of Review...........................................19
B. The Pay Disparity Claim Should be Tried...........................19

Issue No. 4: The Trial Court Erred in Granting Summary Judgment on
Jones' Title VII Retaliation Claim ............................21
A. Standard of Review...........................................21
B. The Title VII  Retaliation Claim...........................22

Issue No. 5: The Trial Court Erred in Granting Summary Judgment on
Jones' ADA Accommodation Claim ........................25
A. Standard of Review...........................................25
B. The ADA Accommodation Claim ........................25

Issue No. 6: The Trial Court Erred in Granting Summary Judgment on
Jones' ADA Retaliation Claim .................................29
A. Standard of Review...........................................29
B. The ADA Retaliation Claim .................................29

Issue No. 7: The Trial Court Erred in Granting Summary Judgment on
Jones' ADA Discrimination Claim...........................31
A. Standard of Review...........................................31

        B. The ADA Discrimination Claim...........................................32

VI.    CONCLUSION.................................................................................33

SIGNATURE PAGE.............................................................................33

CERTIFICATE OF SERVICE ..............................................................34

CERTIFICATE OF COMPLIANCE......................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Celotex Corp. v. Catrett*,
  477 U.S. 317, 106 S.Ct. 2548 (1986).............................................................13

*Cotton v. Russell*,
  830 F. App'x 145 (5th Cir. 2020) (per curiam) . Op. .......................................15

*Davis v. Zahradnick*,
  600 F.2d 458 (4th Cir. 1979) ...........................................................................14

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance,*
  *Inc.*,
  123 F.3d 301 (5th Cir. 1997) ....................................................................*passim*

*Douglass v. United Servs. Auto. Ass'n*,
  79 F.3d 1415 (5th Cir.1996) (en banc) ............................................................14

*EEOC v. GE*,
  532 F.2d 359 (4th Cir. 1976) ...........................................................................17

*Horn v. Squire*,
  81 F.3rd 969, 973 (10th Cir. 1996)...................................................................14

*Losch v. Borough of Parkesburg, Pennsylvania*,
  736 F.2d 903 (3rd Cir. 1984) ...........................................................................14

*Lujan v. National Wildlife Fed'n*,
  497 U.S. 871 (1990)..........................................................................................14

*Patton v. Jacobs Eng'g Group, Inc.*,
  874 F.3d 437 (5th Cir. 2017) ...........................................................................15

*Sanchez v. Standard Brands, Inc.*,
  431 F.2d 455 (5th Cir. 1970) ................................................................15, 17, 18

**Statutes:**

28 U.S.C. § 636(b)(1)...............................................................................................14

28 U.S.C. §1291 ................................................................................1

28 U.S.C. § (b)(1)(A) .......................................................................14

42 U.S.C. § 12102(4)(A) ..................................................................25

42 U.S.C. § 12102(4)(B) (providing that substantial-limitation
    requirement "shall be interpreted consistently with the findings and
    purposes of the ADA Amendments Act of 2008")............................25

ADA ....................................................................................*passim*

ADA amendments..............................................................................25

Americans with Disabilities Act of 1990 .........................................16

Americans with Disabilities Act of 1990 Section 503(a) .................16

Civil Rights Act of 1964 Title VII .....................................*passim*

**Other Authorities**

29 C.F.R. § 1601.12(b) ....................................................................17

29 C.F.R. § 1630.2(j)(1)(i)................................................................25

29 C.F.R. § 1630.2(j)(1)(ii)...............................................................26

Fed. R. Civ. P. 56(c)..........................................................................13

# I.

## STATEMENT OF JURISDICTION

The trial court previously had jurisdiction because matters related to questions of federal law, specifically race and disability discrimination claims brought under Title VII and the Americans with Disabilities Sct. ROA.9, 16-18.

Plaintiff-Appellant filed her Complaint on July 8, 2022 after she was discharged from the City of Dallas. ROA.16.

Defendant-Appellants filed a Motion for Summary Judgment on September 15, 2023. ROA.89.  Jones filed her Response and supporting papers which she contends raise fact issues about her claims on October 16, 2023. ROA.874-1109. The trial court referred the matter for recommendations from the Magistrate Judge. ROA.1140. The Magistrate entered findings recommending summary judgment be granted without conducting a hearing on June 6, 2024. ROA.1143.  Jones timely objected to the recommendations on June 20, 2024. ROA.1184.  The trial court accepted the Magistrate's Findings and Recommendations by order entered on August 7, 2024. ROA.1262.  The Final Judgment was entered the same day. ROA.1266.

Plaintiff-Appellant Jones timely filed a Notice of Appeal on August 30, 2024. ROA.1267.  This Court has jurisdiction because Jones appeals from a final judgment.  28 U.S.C. §1291.

## II.

## <u>STATEMENT OF THE ISSUES</u>

**Issue No. 1:**      **Jones Exhausted Administrative Remedies Under Title VII.**

**Issue No. 2:**      **Jones Exhausted Administrative Remedies under the ADA.**

**Issue No. 3:**      **The Trial Court Erred in Granting Summary Judgment Against Jones on Her Pay Disparity Claim.**

**Issue No. 4:**      **The Trial Court Erred in Granting Summary Judgment on Jones' Title VII Retaliation Claim.**

**Issue No. 5:**      **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Accommodation Claim.**

**Issue No. 6:**      **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Retaliation Claim.**

**Issue No. 7:**      **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Discrimination Claim.**

**III.**

**STATEMENT OF THE CASE**

**A. Plaintiff's Background.**

Plaintiff is a veteran, previously holding the rank of Captain, and who served in the United States Army. She served in Bosnia, and suffers from a number of ailments related to her service, including PTSD, depression, anxiety and musculoskeletal issues with her back and knees. She held an 80% service disability rating as of 2016. Jones Declaration, Pl. App. p. 1, ROA.880.

Plaintiff has a college degree, and a Master's Degree in Public Administration. She started work for the City in 2000, and continued in her employment until 2019 for a period of nearly nineteen years. Jones Declaration, Pl. App. p. 2, ROA.881.

**B. The Prior Lawsuit.**

Plaintiff had previously brought a lawsuit alleging discrimination against minority women in promotion opportunities. On or about August 8, 2018, the case ended adversely to her. Jones Declaration, Pl. App. p. 2, ROA.881.

**C. Previous Accommodations.**

Plaintiff had previously applied for and received intermittent FMLA from May through November 2018 allowing her to attend regularly scheduled physician

and psychologist appointments. She extended this period through May 5, 2019. Jones Declaration, Pl. App. p. 2, ROA.881.

### D. <u>Contract Solutions Specialist.</u>

On August 16th, 2018, The Homeless Services Department posted an open position for Contracts Solution Specialist. On August 19th, Plaintiff submitted her application and received confirmation from the software that her application was received at that time. Erika Johnson, the supervisor for the position, told Plaintiff her application had been rejected, but then assigned her to the position without any pay raise. Plaintiff protested this change should come with the same compensation as her white peer, Lori Davidson, who was similar in education and experience. At first, Johnson stated that she would grant Plaintiff a 3% raise – which would still not bring Plaintiff to equal pay with Davidson – but soon rescinded any type of increase after Jones complained. The loose justification given was that Plaintiff had confused reclassification with promotion. Both Davidson and Jones held Master's degrees, and Jones had five years' more seniority. Jones Declaration, Pl. App. pp. 2-3, ROA.881-82.

African American employee Anita Crethers reported a similar experience. She was hired in the position of Contract Solutions Specialist in approximately late March 2019. Crethers Decl. at 1, Pl. App. p. 39. She held a Master's in Public Administration, and had seven years of experience, with three in the Office of

Homeland Solutions. Crethers Decl. at 1, Pl. App. p. 39, ROA.918. She reports that the department was "very understaffed." She was paid only $47,000 per year, compared to $86,000 per year for Davidson, but did not complain. Crethers Decl. at 2, Pl. App. p. 40, ROA.919.

**E. Loss of Accommodations.**

In September of 2018, Plaintiff was moved out of an enclosed cubicle environment to a completely open office area. Plaintiff was provided with a small desk that forced her knees to hit the desk because she wore knee braces. She was two feet away from a co-worker's desk, and aisles were always busy, unlike in her previous cubicle. Among other things, Plaintiff suffers from PTSD from her service in the Bosnian War. These new working conditions triggered her anxiety due to past trauma, making her everyday work environment unhealthy and unaccommodating. The desks were situated so that employees had to be approached from behind and she faced a brick wall with holes all over it which triggered anxiety. She was placed near a water fountain, door access to a copy machine, and in the middle of two departments which meant that she had to listen to doors slam all day long, which triggered PTSD anxiety attacks. Additionally, her peers would bring candles and incense, wear heavy perfume, and spray chemicals in the air that made her sick daily due to allergies and asthma. Jones Declaration, Pl. App. p. 3, ROA.882.

## F.  **Requests for Accommodations.**

Plaintiff met with her immediate Supervisor, Ms. Ericka Johnson ("Ms. Johnson") regarding the dangers of Plaintiff's exposure to air-borne chemicals. Johnson informed Plaintiff that others had a right to use whatever chemicals they wanted to in their desk spaces. Jones Declaration, Pl. App. p. 3.  Plaintiff then met with HR Supervisor Vanessa Jones ("Ms. V. Jones") and showed Ms. V. Jones an accommodation letter from Plaintiff's doctor requiring protection from aerosols of any kind, and a private office to limit distractions. Plaintiff followed up in writing and supported her requests with letters and forms from her doctors, including PX-20, PX-21 and PX-33. Jones Declaration, Pl. App. pp. 3-4, 10, 11, and 17, ROA.882-83, 889-90, 896. When the City failed to provide her with a protected office environment, she requested a transfer, which was denied. See, Pl. App. p. 4, PX-46, Pl. App. p. 38, ROA.883, 917.

## G. **Request to Work from Home.**

When the City declined to provide an enclosed office environment, Plaintiff requested to work from home in early 2019. Pl. App. p. 4, ROA.883.  She supported her request with a letter and form from her psychiatrist. See PX-34 and PX-22, Pl. App. pp. 18, 14, ROA.897, 893. She sent a letter directly to the Director of HR. Pl. App. p. 4; PX-41, Pl. App. p. 31, ROA.883, 910. She also provided documentation from Dr. Xuan-Dao Le on how the cubicle was causing pain when

she bumped her knee braces on the cubicle. Pl. App. p. 4; PX-38, Pl. App. p. 26, ROA.883, 905.  Still, the City did not let her work at home, or effectively communicate any offer of a private office. Pl. App. p. 4, ROA.833.

### H.  Further Complaints of Harassment and Failure to Accommodate.

Plaintiff complained of harassment, and continued pushing for effective accommodations. On or about January 28, 2019, she sent a complaint directly to City Manager TC Broadnax explaining that her department was severely understaffed, and that her manager was harassing her and creating a hostile work environment. Pl. App. p. 4, ROA.883. A copy of the e-mail she sent is included in the Appendix. PX-42, Pl. App. p. 32, ROA.911.

Plaintiff also complained directly to the Texas Workforce Commission about harassment, discrimination and failure to accommodate on or about February 20, 2019. She followed up with a letter dated March 11, 2019, which is included in the Appendix. Pl. App. p. 5; PX-39, Pl. App. p. 29, ROA.884, 908.

### I.  First Injury from Failure to Accommodate.

The failure to properly accommodate Plaintiff led to direct injury to her. On or about March 1, 2019, an insecticide was sprayed in her work area.  Plaintiff had to leave work to seek treatment, and wound up spending approximately $400 in prescription medication. She complained to Vanessa Jones in HR and Assistant City Manager Nadia Chandler-Hardy.  Pl. App. p. 5, ROA.884.

### J.  **HR Investigation Commences.**

At this point, HR appeared to be at least going through the motions of conducting an investigation. On or about March 26, 2019, Plaintiff provided them with an e-mail included in the Appendix marked PX-45 explaining she was being harassed for using FMLA intermittent leave to visit her doctors, and given unreasonable deadlines.  Pl. App. p. 5, ROA.884; PX-45, Pl. App. p. 35, ROA.914.

### K. **Second Chemical Injury.**

While the HR machinery's wheels began to turn, Plaintiff was again subjected to chemicals which caused a severe reaction. On or about May 9, 2019, chemicals were sprayed in her work area, leading to her going to the hospital and being out for nearly a week. Pl. App. p. 5, ROA.884. She wound up using all of her available FMLA leave, leaving none for her regular doctor appointments. Pl. App. p. 5, ROA.884. No adjustments were made to her work load due to the fact she was out on protected leave, or that the absences were directly the result of the City's failure to accommodate. Pl. App. p. 5, ROA.884.  The City's own Safety Officer concluded that exposing Plaintiff to such odors could be an ADA violation. Hardman Exh. 7, Pl. App. p. 107, ROA.986. Plaintiff again protested directly to the City Manager by e-mail dated May 29, 2019. Pl. App. p. 5, ROA.884; PX-43, Pl. App. p. 34, ROA.913.

### L.  **HR Confirmed Johnson's Abusive Behavior.**

HR finally issued its report on June 6, 2019. Hardman Ex. 15, Pl. App. p. 163, ROA.1042. The text of the report confirms other employees were having difficulty with abusive behavior from Johnson, Plaintiff's manager. Ms. Sandoval confirmed that Johnson yelled at employees on multiple occasions in front of Ms. Hardman, and made clear it was for reporting issues in the department. Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047. Sandoval confirmed that Hardman "seemed to agree with Ms. Johnson and allowed her to continue her yelling and verbal attacks in front of two other co-workers." Ex. 15 at pp. 5, Pl. App. p. 168, ROA.1047. She wound up using vacation days to stay away from the office, and would stay in her office to "best minimize contact with the 'more aggressive' employees." Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047. Sandoval reports that another employee, Amy Thomas, had complained about Johnson, but that "Johnson does not appear to be held accountable for her behavior or cannot change." Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047.

Harman reported to HR that she was aware of concerns about Jones "being tardy and away from her desk for extended period of time." Ex. 15 at p. 6, Pl. App. p. 169, ROA.1048. She also indicated she was "aware that Ms. Jones has FMLA, and believes that most absences are appropriately documented." She continued, "Hardman stated that Ms. Jones' peers are overwhelmed as well, but the main difference is that they will go the extra mile to ensure that deadlines are met." Ex.

15 at pp. 6, Pl. App. p. 169, ROA.1048. Thus, it seems obvious that Hardman very much had in mind that Jones was taking time off for medical conditions protected under both the FMLA and ADA.

The notes reflect that comments from Johnson were focused on Jones' attendance, and that Jones requested FMLA leave following the announcement of an "attendance plan" in October 2019.  Ex. 15 at p. 6, Pl. App. p. 169, ROA.1048.

The report confirmed from both Jones and Davidson that the department was severely understaffed.  Ex. 15 at pp. 3-4, Pl. App. p. 166-67, ROA.1045-46. Davidson admitted that she "struggles to manage assignments," and that she was asking for extensions and missing deadlines. Ex. 15 at p. 4, Pl. App. p. 167, ROA.1046. The HR investigator specifically asked Davidson about Jones' attendance and punctuality, and Davidson reported that it appeared to be improving. Ex. 15 at p. 4, Pl. App. p. 167, ROA.1046.

### M.  **The Requested Accommodations were Reasonable.**

The accommodations of medical leave for doctor visits, more private office space, transfer and/or work from home were all reasonable. Jones reports Amy Thomas was provided a private office when requested. Pl. App. p. 6, ROA.885. Wei-Lin Wang was relocated on request as well. Id. Jones reports the City made no serious investigation as to whether work from home could have worked for her. Pl. App. p. 8, ROA.887. Crethers reports that when Covid-19 hit less than a year later,

the City allowed work from home for over a month, put up privacy panes on the cubicles, and then allowed hybrid work. Crethers Decl. at 3-4, Pl. App. pp. 41-42, ROA.920-21. Crethers believes work from home would be feasible assuming travel to onsite locations could be performed. Crethers Decl. at 4, Pl. App. p. 42, ROA.921.

### N. <u>Termination & Celebration.</u>

Jones was fired June 14, 2019. The termination letter states no reason for the separation. Exhibit 14, Pl. App. p. 162, ROA.1041. However, Crethers reports that Johnson was apparently celebrating the termination, "happily skipping down the hallway spraying some sort of mist in the air as she went." Crethers Decl. at 3, Pl. App. p. 41, ROA.920. Jones was the only employee in the department that had issues with sprays and perfumes. *Id*. Jones received confirmation of this behavior from another source while driving home. Pl. App. p. 7, ROA.886.

### O. <u>Crethers Disputes Monitoring Explanation.</u>

Although Hardman indicates in her deposition the reason for letting Jones go was related to a HUD letter and failure to monitor spending levels, Crethers directly disputes this. Crethers reports it was not their responsibility to monitor spending under the contract, and that a different department held that responsibility. Crethers Decl. at 3, Pl. App. p. 41, ROA.920. Crethers wasn't trained to do this by Johnson, and didn't have any SOP's instructing her to monitor

spending levels. *Id*. Jones confirms this testimony. Pl. App. pp. 7-8, ROA.886-87. She also explains that minimal disbursements were made for months due to a defective software program to the point that it nearly bankrupted the charities the City worked with, and no employees were disciplined for this result. Pl. App. p. 8, ROA.887.

**P.  Failure to Accommodate Hurt Plaintiff's Job Performance.**

Even if there were performance issues, at least part of the problem was the failure of the City to accommodate. Plaintiff opines her performance would have been better had she been allowed accommodations, including protections that would have kept her out of the hospital. Pl. App. p. 8, ROA.887.

**Q. EEOC Process.**

Jones timely filed her EEOC Charge within 300 days following her termination. ROA.274.

**IV.**

**SUMMARY OF THE ARGUMENT**

This case is replete with fact and credibility issues that can only be resolved by a jury. Jones clearly engaged in protected conduct, including a Title VII lawsuit, complaints of discrimination, and repeated requests for accommodations.  She was fired closely following the protected conduct, and there is ample reason to suspect the City's reasons to be pretext. The magistrate's order and proposed findings fail to

adequately address the evidence, and the trial court erred by affirming the recommendations and granting summary judgment.

## V.

## ARGUMENT

**Issue No. 1:** **Jones Exhausted Administrative Remedies Under Title VII.**

### A. **Standard of Review.**

Because examination of these issues involves an appeal from the District Court's grant of summary judgment, the Fifth Circuit reviews these issues *de novo*. *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d 301, 304-05 (5th Cir. 1997).

The standard for entry of summary judgment is well settled law. Summary judgment is proper in a case only where there is no genuine issue of material fact. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 2552 (1986). A defendant who seeks summary judgment on a plaintiff's cause of action must demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323, 106 S.Ct. at 2553. Defendant, as movant, cannot rely on conclusory statements to establish that Plaintiff has not presented evidence on an essential element. Rather, Defendant must demonstrate an absence of a genuine factual dispute. *Celotex*, 477 U.S. at 327, 106 S.Ct. at 2555. Only if Defendant

meets its burden is Plaintiff required to respond by summary judgment proof to show a genuine issue of material fact.

To determine whether there is a genuine issue of material fact, the Court must consider the summary judgment proof in the light most favorable to Plaintiff as the non-movant. *Horn v. Squire*, 81 F.3rd 969, 973 (10th Cir. 1996). All reasonable doubts must be resolved against the moving party. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 888 (1990). Conflicts of credibility should not be resolved by motion for summary judgment. *Losch v. Borough of Parkesburg, Pennsylvania*, 736 F.2d 903 (3rd Cir. 1984); *Davis v. Zahradnick*, 600 F.2d 458 (4th Cir. 1979)

## B.    Jones Exhausted Administrative Remedies.

The Magistrate erred in finding that Jones failed to exhaust administrative remedies under Title VII except at to her pay disparity claim. (Doc. No. 46 at p.7, ROA.1149) The trial court adopted the Magistrate's opinion. ROA.1262.[1]  The Magistrate acknowledges, but then proceeds to ignore that the restrictions are "not jurisdictional limitations on [a federal court's] ability to hear the case; rather they

---

[1] The magistrate reference statute requires review *de novo*, and allows the trial court to "receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1).  Thus, Jones was timely in objecting to the magistrate's rulings as to failure of exhaustion.  In any event, the trial court should have sent the matter back to the magistrate if he thought it improperly addressed, or at least also conducted a review under the "plain error" standard, which is met here for the reasons explained above. *See*, 28 U.S.C. § (b)(1)(A); *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir.1996) (en banc), *superceded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days)(allowing review of magistrate decisions even when deadline to file objections has passed). The issue could have been raised in response to the City's argument, but Judge Lindsay does not permit reply briefs. ROA.1141.

are claim-processing rules, which seek to promote the orderly progress of litigation by requiring that the parties take certain procedural steps at certain specified times." *Cotton v. Russell*, 830 F. App'x 145, 147 (5th Cir. 2020) (per curiam) (cleaned up). Op. pp. 7-8, ROA.1149-50. The Magistrate again correctly noted, but improvidently applied the doctrine that to determine "whether a plaintiff has exhausted a particular claim, [the Fifth Circuit has] noted that 'the scope of an EEOC complaint should be construed liberally.'" *Patton v. Jacobs Eng'g Group, Inc.*, 874 F.3d 437, 443 (5th Cir. 2017) (*quoting Pacheco v. Mineta*, 448 F.3d 783, 788 (5th Cir. 2006)). *See, also, Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 463 (5th Cir. 1970)("We must ever be mindful that the provisions of Title VII were not designed for the sophisticated or the cognoscenti, but to protect equality of opportunity among all employees and prospective employees. This protection must be extended to even the most unlettered and unsophisticated.")

The Magistrate partially summarizes the Charge at pages 8-9 of his Opinion:

Co-worker Lori Davidson (White) and I were both promoted to Contract Solutions Specialists in or around August of 2018. I complained to HR, Nina Arias (on or around September 2019) about the unequal pay and nothing was done. Lori Davidson was being paid $86K and I was being paid $61,171 and we were in the same positions. I also asked and submitted multiple of reasonable accommodation requests and I received no response, no interactive process took place, and nothing was done. I was terminated in June 14, 2019 in retaliation because of my complaints of unequal pay and requests for reasonable accommodations.

I believe that I was discriminated against because of my Race (African American/Black), in violation of Title VII of the Civil Rights Act

of 1964, as amended. I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1984, as amended. I believe that I was discriminated against based on disability, in violation of the Americans with Disabilities Act of 1990. I believe that I was retaliated against in violation of Section 503(a) of the Americans with Disabilities Act of 1990, as amended.

ROA.1150-51  The Magistrate omits that no reason was given to Plaintiff for her termination. (Doc. No. 23-2 at Def. App. p. 127, ROA.274) He further omits that the Charge was drafted by the EEOC itself as a summary of her claims, as Plaintiff was not yet represented by counsel at that time. (Doc. No. 23-2 at D. App. pp. 132-35, ROA.279-82) It took essentially a year and multiple attempts just to get the EEOC and Department of Justice to issue an obligatory "right to sue" letter, so imaging a thorough investigation was conducted by the overwhelmed EEOC staff is likely a judicial fiction employed to deny Plaintiff her day in court. (Doc. No. 23-2 at D. App. pp. 134, 131, ROA.281, 278)

In any event, the Magistrate errs in limiting the scope of the Title VII claim to just pay disparity. It is clear Jones alleges reporting the pay disparity to HR, and then separately alleges both retaliation under Title VII and under the ADA. The Court need not infer, because she pointedly states: "I was terminated in June 14, 2019 in retaliation because of my complaints of unequal pay and requests for reasonable accommodations." (Doc. No. 23-2 at Def. App. p. 127, ROA.274) The fact that she was harassed and treated differently is obviously referrable to proof of

racial and retaliatory animus, and it is improper to limit the scope of the Charge as the Magistrate proposes. The EEOC's regulations further provide that the Charge need not be overly specific. EEOC regulations provide: "… a charge is sufficient when the Commission receives from the person making the charge a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b)(emphasis added). It is patently unfair to punish Plaintiff when the EEOC has decided as a matter of policy and practice that they do not want Charges looking like 20 page complaints. *See, EEOC v. GE*, 532 F.2d 359 (4th Cir. 1976)("The charge is not to be treated as a common law pleading that strictly cabins that strictly cabins the investigation that results therefrom…").

Jones further explained in her declaration that her prior lawsuit, which ended on August 8, 2018, related to discrimination promotion opportunities for minority women, which strongly implies connection to her new allegation of racial pay disparity, since promotions are naturally liked to the issue of pay. Jones Decl. ¶ 6, Pl. App. p. 2, ROA.881. As the Fifth Circuit explained in *Sanchez*, "[A]llegations in a judicial complaint filed pursuant to Title VII 'may encompass any kind of discrimination like or related to allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission.'" *Sanchez*, 431 F.2d at 466, *quoting King v. Georgia Power Co*., 295 F.Supp. 943

(N.D. Ga. 1968).

**Issue No. 2:** **Jones Exhausted Administrative Remedies under the ADA.**

    **A.**     **Standard of Review.**

    Because examination of these issues involves an appeal from the District

Court's grant of summary judgment, the Fifth Circuit reviews these issues *de novo*.

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d

301, 304-05 (5th Cir. 1997).

    **B.**     **Jones Exhausted Administrative Remedies under the ADA.**

    The Magistrate followed by the trial court erred in finding that Jones failed

to exhaust administrative remedies under the ADA. (Doc. No. 46 at p.10,

ROA.1152) The Magistrate cites a flurry of unpublished decisions, but again

repeats his error of second guessing the EEOC intake person for not listing out

every separate disability or request for accommodations. Op. pp. 11-12,

ROA.1153-54.  Obviously, the EEOC was alerted to the issue, and could have

followed up with Jones had it desired additional information after beginning its

investigation.  The Fifth Circuit long ago rejected the Magistrate's approach. *See,*

*Sanchez*, 431 F.2d at 465 (rejecting the notion that: "every particular fact alleged in

the judicial complaint must have a direct counterpart in the charge of

discrimination" in favor of a libel scope analysis). In any event, Jones should not

be barred from this Court due to the EEOC's failure to spell out each attempt to get

an accommodation, which efforts continued within 300 days of her termination.

Thus, the Magistrate's recommendation with respect to Plaintiff's ADA claims

should have been rejected, and Jones allowed to try her claims.


**Issue No. 3:     The Trial Court Erred in Granting Summary Judgment Against Jones on her Pay Disparity Claim.**

**A.     <u>Standard of Review.</u>**

Because examination of these issues involves an appeal from the District

Court's grant of summary judgment, the Fifth Circuit reviews these issues *de novo*.

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d

301, 304-05 (5th Cir. 1997).

**B.     <u>The Pay Disparity Claim Should be Tried.</u>**

The Magistrate erred in recommending dismissal of Plaintiff's pay disparity

race claim. (Doc. No. 46 at p.14, ROA.1156) The trial court erroneously adopted

the recommendation. ROA.1262.

Although Plaintiff held the exact same job title as her white counterpart, the

Magistrate contends Plaintiff failed to establish they performed "nearly identical"

work because Lori Davidson's position was "grant-funded", had additional job

duties, and worked longer hours. Op. at 15-16, ROA.1157-58.  Even assuming

Plaintiff proffers evidence they worked comparable jobs, the Magistrate claims

there is no evidence of pretext in connection with the explanation for the disparity. Op. at 16-17, ROA.1158-59.

As previously noted, there was a whopping disparity between Davidson, the white employee, and both Jones and Crethers, as black employees in the Contract Solutions Specialist position.  Both Plaintiff and Davidson held the same job title, and had master's degrees. Jones Decl., ¶ 8, Pl. App. p. 2. After being placed in the position, Plaintiff complained Davidson was "doing the same job and getting paid about $25,000 more per year." Jones Decl., ¶ 8, Pl. App. p. 2, ROA.881. She notes that while Davidson has a law degree, that this was not an advertised requirement for the position. Jones Decl., ¶ 8, Pl. App. p. 3, ROA.882. Jones actually had five years more seniority than Davidson. *Id*. After Jones complained about the pay disparity, a promised 3% raise was rescinded. *Id*.

Crethers was also hired in the position of Contract Solutions Specialist in approximately late March 2019. Crethers Decl. at 1, Pl. App. p. 39, ROA.918. She held a Master's in Public Administration, and had seven years of experience, with three in the Office of Homeland Solutions. Crethers Decl. at 1, Pl. App. p. 39, ROA.918.  She reports that the department was "very understaffed." She was paid

only $47,000 per year, compared to $86,000 per year for Davidson, but did not complain. Crethers Decl. at 2, Pl. App. p. 40, ROA.919.

Contrary to the Magistrate's findings, Jones does dispute that "grant funding" or education explains the difference in salary, or renders Davidson an inappropriate comparator. Jones also did grant work, but got paid nothing extra for it. Jones Decl., ¶ 31, Pl. App. p. 7, ROA.886. After Jones was let go, Davidson wisely transferred out of the department due to the work load, leaving Crethers to do Davidson's job as well.  Crethers Decl., ¶ 15, Pl. App. pp. 41-42, ROA.920-21. Crethers also didn't get any extra pay for handling the HOPWA grant contracts, or Davidson's other work duties. Crethers Decl., ¶ 16, Pl. App. p. 42; ROA.921. Thus, Plaintiff provides evidence of an enormous pay differential even when a black employee did Davidson's exact job, and provides evidence of pretext as to the given explanation. Therefore, the Magistrate's Recommendation should be rejected, and the trial court reversed.


**Issue No. 4:**        **The Trial Court Erred in Granting Summary Judgment on Jones' Title VII Retaliation Claim.**

### A.    <u>Standard of Review.</u>

Because examination of these issues involves an appeal from the District Court's grant of summary judgment, the Fifth Circuit reviews these issues de novo.

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc.*, 123 F.3d
301, 304-05 (5th Cir. 1997).

### B. The Title VII Retaliation Claim.

The Magistrate erred in recommending dismissal of Plaintiff's Title VII
Retaliation claim alternative to the "failure to exhaust" finding. (Doc. No. 46 at
p.19, ROA.1161)  The trial court adopted the decision. ROA.1264.

Notably, the Magistrate ignores that Plaintiff alleges that her complaint
about the pay inequity with Davidson resulted in retaliation, thus making his
recommendation incomplete at best.  (Doc. No. 1, Original Complaint at ¶ ¶ 3.05,
3.10, 5.01., ROA.10, 12, 17) A 3% raise was rescinded by Johnson immediately
after she complained, which is immediate evidence of retaliation. Jones Decl., Pl.
App. pp. 2-3. ROA.881-82.  Johnson obviously knew of the complaint. *Id*.

The Magistrate points out that the earlier case had been filed years earlier,
and then finds that this activity was too remote. Op. p. 21, ROA.1163.  However,
the analysis is flawed. Opposing unlawful conduct by filing a lawsuit doesn't end
at the filing of a lawsuit. Rather, the very act of continuing a lawsuit, with all of the
attendant activity of depositions, hearings, motions and such, must reasonably be
regarded as also opposing discrimination. The Court should be more prescient than
to allow termination once the earlier court is no longer watching.

Plaintiff clearly does offer evidence of a causal temporal relationship between harassment from Johnson, her immediate supervisor, and both the termination of her earlier suit and the more current complaint of pay disparity. Her office environment changed within weeks. Jones Decl. ¶ 6, 9, Pl. App. pp. 2-3, ROA.881-82. Johnson was indifferent to her disability needs. Jones Decl. ¶ 9, Pl. App. p. 3, ROA.882. She reported harassment to HR in November 2018. Jones Decl. ¶ 11, Pl. App. pp. 3-4, ROA.882-83. Her request to transfer out of the department was denied. Jones Decl. ¶ 12, Pl. App. p. 4, ROA.883. Johnson became more critical, and treated Jones differently than Davidson, such as by standing at her desk and not letting her go home. Jones Decl., ¶ 20-21, 23, Pl. App. p. 6, ROA.885.

The Magistrate assumes that because Johnson was also fired, that Jones cannot show "but for" causation for retaliation. Op. at 21, ROA.1163. However, Johnson was in a different job position, and HR had just confirmed reports of harassment and intimidation by other employees toward Johnson. HR issued a report on Johnson only days before her termination. Hardman Ex. 15, Pl. App. p. 163, ROA.1042. The text of the report confirms other employees were having difficulty with abusive behavior from Johnson, Plaintiff's manager. Ms. Sandoval confirmed that Johnson yelled at employees on multiple occasions in front of Ms. Hardman, and made clear it was for reporting issues in the department. Ex. 15 at p.

5, Pl. App. p. 168, ROA.1047. Sandoval confirmed that Hardman "seemed to agree with Ms. Johnson and allowed her to continue her yelling and verbal attacks in front of two other co-workers." Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047. She wound up using vacation days to stay away from the office, and would stay in her office to "best minimize contact with the 'more aggressive' employees." Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047. Sandoval reports that another employee, Amy Thomas, had complained about Johnson, but that "Johnson does not appear to be held accountable for her behavior or cannot change." Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047. Thus, Johnson is not a comparable employee, and Hardman's motives for firing her cannot be presumed to be the same.

Further, there is corroborated evidence of pretext. Namely, monitoring of actual expenditures, the articulated reason for terminating Plaintiff, was not part of Plaintiff's job. Jones explains this in her declaration. Jones Decl., ¶ 32, Pl. App. pp. 7-8, ROA.886-87. A different department was supposed to monitor spending. *Id*. Further, there were no written SOP's instructing Plaintiff to monitor spending levels. *Id*. No one in the billing department that was supposed to be monitoring the spending was disciplined. *Id*. Crethers confirmed all of this in her declaration as well. Crethers Decl. ¶ 12, Pl. App. p. 41, ROA.920. Thus, a jury should determine the issue of whether the City's proffered explanation is believable, or whether it is just an elaborate excuse for retaliation.

**Issue No. 5:** **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Accommodation Claim.**

### A.   Standard of Review.

Because examination of these issues involves an appeal from the District Court's grant of summary judgment, the Fifth Circuit reviews these issues de novo. *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d 301, 304-05 (5th Cir. 1997).

### B.   The ADA Accommodation Claim.

The Magistrate erred in recommending dismissal of Plaintiff's failure to accommodate claims under the ADA as an alternative to the "failure to exhaust" finding. (Doc. No. 46 at p. 24, ROA.1166) The trial court erroneously accepted the recommendation. ROA.1264.

Under the 2008 ADA amendments, the term "disability" shall be construed in favor of broad coverage of individuals to the maximum extent allowed by the terms of these laws. 42 U.S.C. § 12102(4)(A).  In conformity with this directive, the federal regulation implementing the ADA's substantial-limitation requirement now provides that it "shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA." 29 C.F.R. § 1630.2(j)(1)(i); *see also* 42 U.S.C. § 12102(4)(B) (providing that substantial-limitation requirement "shall be interpreted consistently with the findings and purposes of the ADA Amendments Act of 2008"). An impairment qualifies as a

disability "if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii). This showing "usually will not require scientific, medical, or statistical analysis." *Id*. § 1630.2(j)(1)(v). Moreover, the impairment "need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting." *Id*. § 1630.2(j)(1)(ii). Though "not every impairment will constitute a disability" under the ADA, the substantial-limitation requirement "should not demand extensive analysis." *Id*. § 1630.2(j)(1)(ii)–(iii).

The Magistrate looks to the report from the psychiatrist, and takes from an omission of mention of asthma that she does not have the condition, or that there is no impairment. Op. p. 25 (ROA.1167), citing Dkt. No. 23-13 (App. 624, ROA.771). The citation is misleading, because the psychiatrist on the same page does describe "difficulty with concentration, distraction, exacerbation of allergic rhinitis, musculoskeletal pain [and] eye twitching." *Id*. There is further a description that the conditions impair job functions: "Cannot concentrate, frequency of headaches increased; increased anxiety; increased difficulty with upper respiratory symptoms." *Id*. The doctor continues with the observation that "medical conditions are permanent but can be well managed with recommended accommodations." Reading from this that there is no disability when Plaintiff had

an 80% service disability rating is, quite simply, an abuse of the summary judgment standard. Jones Declaration, Pl. App. p. 1, ROA.880.

The other citation to doctor testimony is equally unpersuasive. The Magistrate points to doctor testimony at Dkt. No. 23-12 at 4 (Def. App. 612, ROA.759) for lack of a respiratory disability. Op. p. 25, ROA.1167. However, a different doctor there admits that Plaintiff's allergy condition required multiple drugs, and that she told the insurance company that Plaintiff did have asthma so that she could receive an inhaler, presumably for emergency situations. Def. App. p. 611, ROA.759. The doctor does not dispute Plaintiff's testimony about the need to avoid aerosols. *Id.*

Plaintiff's testimony, which the Magistrate is all too eager to discard, sheds further light on the situation with respect to her respiratory difficulties, whatever they may be. Plaintiff testifies she "suffered from asthma, and was sensitive to sprays, perfumes, and other aromatic substances." Jones Decl., ¶ 3, Pl. App. p. 1, ROA.880. She continues in ¶ 16 that spray of a toxic pesticide in her area made her sick, causing her to have to leave work and spend $400 on prescription medicine. Jones Decl., ¶ 16, Pl. App. p. 5, ROA.884. She complained to HR and Assistant City Manager Nadi Chandler-Hard. *Id.* Crethers confirms on another occasion, spraying air freshener caused problems. Crethers Decl. ¶ 9, Pl. App. p. 40, ROA.919. On or about May 9, a substance was sprayed that sent her to the

hospital, putting her out of work for a week. Jones Decl. ¶ 18, Pl. App. p. 5, ROA.884. This time, she complained directly to the City Manager on May 29, 2019. *Id*. She was fired approximately two weeks later. Jones Decl. ¶ 25, Pl. App. p. 7, ROA.886. The Magistrate's Recommendation essentially ignores this testimony.

Again, the Magistrate essentially ignores favorable testimony that the City could accommodate Plaintiff's needs had it seriously tried. Plaintiff requested either a private office or work from home. Jones Decl. ¶ 35, Pl. App. p. 8, ROA.887. Plaintiff describes in her declaration that other employees were allowed to move offices as accommodations, and names two. Jones Decl. ¶ 19, Pl. App. p. 5, ROA.884. The City's attorney essentially admitted it had an office available, but sent the offer of an office to the wrong e-mail address. Pl. App. p. 172, ROA.1051. Thus, the statement in the Recommendation that there was no office available is unsupported by the record. Op. p. 30, ROA.1172.

Alternatively, Plaintiff testified that she could have done most aspects of her job at home, but no serious attempt was made to investigate the possibility. Jones Decl. ¶ 34, Pl. App. p. 8, ROA.887. Silent from the Magistrate's Recommendation is that Crethers supported the statement, and confirmed work from home for her position was allowed when Covid became an issue a year later. Crethers Decl. ¶ ¶ 18-19, Pl. App. p. 42, ROA.921. The City has not shown serious attention was

given to the proposal. Accordingly, the Magistrate's recommendation should be rejected.

**Issue No. 6:**     **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Retaliation Claim.**

**A.**     **Standard of Review.**

Because examination of these issues involves an appeal from the District Court's grant of summary judgment, the Fifth Circuit reviews these issues de novo. *Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d 301, 304-05 (5th Cir. 1997).

**B.**     **The ADA Retaliation Claim.**

The Magistrate erred in recommending dismissal of Plaintiff's ADA retaliation claim as an alternative to the "failure to exhaust" finding. (Doc. No. 46 at p. 30, ROA.1172) The trial court adopted his recommendation. ROA.1264.  The Magistrate cites only Plaintiff's request for accommodation on November 6, 2018, and then concludes this was too remote in time from the termination. Op. pp. 31-32, ROA.1174.

The Magistrate completely ignores that Plaintiff's attempts to get accommodations continued, and escalated up in management, apparently causing increasing resentment from her managers. Her November 7 request was followed by a request to transfer on November 29, 2018. Jones Decl. ¶ 12, Pl. App. p. 4, ROA.883.  She contacted the Director of HR and requested to work from home on

January 4, 2019 supporting the request with a letter from her doctor. Jones Decl. ¶ 13, Pl. App. p. 4, ROA.883. On or about January 28, 2019, she sent a request to the City Manager. Jones Decl. ¶ 14, Pl. App. p. 4, ROA.883. She sent a letter to the Texas Workforce Commission about harassment, discrimination and failure to accommodate on February 20, 2019. Jones Decl. ¶ 15, Pl. App. p. 5, ROA.884. After an odor made her sick and leave work, she complained again on March 1, 2019 to HR and the Assistant City Manager. Jones Decl. ¶ 16, Pl. App. p. 5, ROA.884. HR opened an investigation, and Plaintiff sent a letter on March 26, 2019. Jones Decl. ¶ 17, Pl. App. p. 5, ROA.884.

On May 9, 2019, the "please don't spray things in the department" accommodation failed utterly. Plaintiff was exposed to a chemical spray which sent her to the hospital for a week. Jones Decl. ¶ 18, Pl. App. p. 5, ROA.884. She exhausted her remaining FMLA time, and there was no adjustment of her workload. *Id.* She complained to the City Manager again on May 29, 2019. *Id.*; PX-43, Pl. App. p. 34, ROA.913. She was fired two weeks later. Jones Decl. ¶ 25, Pl. App. p. 7, ROA.886. Crethers reports that Johnson was apparently celebrating the termination, "happily skipping down the hallway spraying some sort of mist in the air as she went." Crethers Decl. at 3, Pl. App. p. 41, ROA.920. Jones was the only employee in the department that had issues with sprays and perfumes. *Id.* Jones received confirmation of this behavior from another source while driving

home. Jones Decl. ¶ 26, Pl. App. p. 7, ROA.886. Far from stopping harassment and retaliation in the department, Hardman seemed to condone it. *See*, Ex. 15 at p. 5, Pl. App. p. 168, ROA.1047.

Further, as noted previously, there is corroborated evidence of pretext. Namely, monitoring of actual expenditures, the articulated reason for terminating Plaintiff, was not part of Plaintiff's job. Jones explains this in her declaration. Jones Decl., ¶ 32, Pl. App. pp. 7-8, ROA.886-87. A different department was supposed to monitor spending. *Id*. Further, there were no written SOP's instructing Plaintiff to monitor spending levels. *Id*. No one in the billing department that was supposed to be monitoring the spending was disciplined. *Id*. Crethers confirmed all of this in her declaration as well. Crethers Decl. ¶ 12, Pl. App. p. , ROA.920. Thus, a jury should determine the issue of whether the City's proffered explanation is believable, or whether it is just an elaborate excuse for retaliation, and the case remanded for trial.

**Issue No. 7:** **The Trial Court Erred in Granting Summary Judgment on Jones' ADA Discrimination Claim.**

### A.    Standard of Review.

Because examination of these issues involves an appeal from the District Court's grant of summary judgment, the Fifth Circuit reviews these issues de novo.

*Doctor's Hospital of Jefferson, Inc. v. Southeast Medical Alliance, Inc*., 123 F.3d
301, 304-05 (5th Cir. 1997).

### B.    Lutz Set Forth a Prima Facie Case of Disability Discrimination.

The Magistrate erred in recommending dismissal of Plaintiff's ADA
discrimination claim as an alternative to the "failure to exhaust" finding. (Doc. No.
46 at p. 32, ROA.1174)  The trial court adopted the recommendation. ROA.1264

The Magistrate claims there is no reason to think either Hardman or
Chandler-Hardy knew of Plaintiff's disabilities.  Op. p. 33, ROA.1175.

Plaintiff, of course, disputes this assertion. Plaintiff directly complained to
Chandler-Hardy about spraying in her area affecting on or about March 1, 2019.
Jones Decl. ¶ 16, Pl. App. p. 5, ROA.884.  Further, HR provided a written report to
Hardman about Plaintiff's complaints that she was being retaliated against and
harassed for seeing her doctors under protected medical leave approximately a
week before the termination. Pl. App. p. 164, ROA.1043.  The report makes plain
the investigation related to the anti-retaliation policy. Pl. App. p. 165, ROA.1044.
The FMLA leave was for doctor visits connected with Plaintiff's disabilities, so it
is disingenuous to argue Hardman was unaware of Plaintiff's disabilities, or the
fact that they were taking her away from the office. *Id*.

Plaintiff, of course, incorporates by reference the additional information
provided in the preceding sections.

# VI.

## CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Jones prays the Court reverse the Magistrate and trial court, and remand this case to proceed to trial.

Dated: November 12, 2024.

Respectfully submitted,

**KILGORE & KILGORE, PLLC**

By: */s/ John H. Crouch, IV*
        John H. Crouch, IV
        SBN 00783906
        jhc@kilgorelaw.com

        3141 Hood St., Suite 500
        Dallas, TX  75204
        214-969-9099 – Telephone
        214-953-0133 – Facsimile

        **ATTORNEYS FOR APPELLANT**
        **JACQUELINE JONES**

## CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that on November 12, 2024, a true and correct copy of the foregoing document was filed with the ECF system, so that an electronic copy of the document was automatically transmitted to counsel for the opposing party.

**Via ECF:**
Sarah E. Mendola, Executive Assistant City Attorney
sarah.mendola@dallas.gov
Nicholas Palmer
nicholas.palmer@dallas.gov
City Attorney's Office
1500 Marilla Street, Room 7D North
Dallas, Texas 75201 *Counsel for Defendants*

*/s/ John H. Crouch, IV*
John H. Crouch, IV

# CERTIFICATE OF COMPLIANCE

1. EXCLUSIVE OF THE EXEMPTED PORTIONS IN 5TH Cir. R. 32.2, THE BRIEF CONTAINS (select one):

   A.    7,361 words, OR

   B.    N/A    lines of text in monospaced typeface.

2. THE BRIEF HAS BEEN PREPARED (select one):

   A.    in proportionally spaced typeface using:

         Software Name and Version:    Microsoft Word 365

         in (Typeface Name and Font Size):  Times New Roman - 14,   OR

   B.    in monospaced (nonproportionally spaced) typeface using:

         Typeface name and number of characters per inch:

           N/A

3. THE UNDERSIGNED UNDERSTANDS A MATERIAL MISREPRESENTATION IN COMPLETING THIS CERTIFICATE, OR CIRCUMVENTION OF THE TYPE-VOLUME LIMITS IN Fed. R. App. P. IMPOSING SANCTIONS AGAINST THE PERSON SIGNING THE BRIEF.

                                      */s/ John H. Crouch, IV*
                                      John H. Crouch, IV