No. 24-10803

# In the United States Court of Appeals for the Fifth Circuit

**Jacqueline Jones**,

Plaintiff – Appellant

v.

**City of Dallas, Texas**,

Defendant – Appellee

Appeal from the United States District Court
for the Northern District of Texas, Dallas Division

## BRIEF OF APPELLEE

TAMMY L. PALOMINO
City Attorney

JENNIFER C. HUGGARD
Chief of Litigation

NICHOLAS D. PALMER
Chief of Appellate Section

SARAH E. MENDOLA
State Bar No. 24057030
Assistant City Attorney
sarah.mendola@dallas.gov

CITY ATTORNEY'S OFFICE
1500 Marilla Street, Room 7DN
Dallas, Texas 75201

Telephone:  214-670-3519
Telecopier:  214-670-0622

ATTORNEYS FOR THE CITY OF DALLAS

## EXEMPTION FROM
## CERTIFICATE OF INTERESTED PERSONS

The City of Dallas, as a governmental party, is exempt from the

requirement to certify interested persons under Local Rule 28.2.1.

*/s/ Sarah E. Mendola*
Counsel for Appellee

## STATEMENT REGARDING ORAL ARGUMENT

Defendant-Appellee City of Dallas submits that oral argument is not needed in this matter because the legal issues presented in this appeal are controlled by well-settled authorities. Argument will not significantly aid the Court in resolution of this appeal.

# TABLE OF CONTENTS

EXEMPTION FROM  CERTIFICATE OF INTERESTED PERSONS.....i

STATEMENT REGARDING ORAL ARGUMENT ..................................ii

TABLE OF AUTHORITIES..................................................................viii

RESPONSE STATEMENT OF ISSUES ..................................................2

1.  The district court correctly granted the City's motion for summary judgment as to all of Jones' claims.

2.  The district court correctly rendered summary judgment for the City on all of Jones' claims under Title VII and the ADA— except for Jones' discriminatory pay disparity claim under Title VII—on failure-to-exhaust grounds.

3.  The district court correctly rendered summary judgment on Jones' Title VII pay disparity claim because Jones can neither establish a prima facie case of discrimination nor demonstrate that the City's nondiscriminatory reason for the pay disparity is pretextual.

4.  The district court correctly rendered summary judgment on Jones' Title VII retaliatory discharge claim because Jones can neither establish a prima facie case of retaliation nor demonstrate that the City's nonretaliatory reason for her termination is pretextual.

5.  The district court correctly rendered summary judgment on Jones' failure to accommodate claims under the ADA because Jones cannot establish she is a qualified individual with a disability and the City offered Jones reasonable accommodations, which she refused.

6.  The district court correctly rendered summary judgment on
    Jones' ADA discriminatory and retaliatory discharge claims
    because Jones can neither establish a prima facie case nor
    demonstrate that the City's nondiscriminatory and
    nonretaliatory reason for her termination is pretextual.

STATEMENT OF THE CASE ................................................................3

I.    Jones' Employment History and Reporting Structure. ...................3

II.   Jones' 2016 Lawsuit. ....................................................................4

III.  Jones' EEOC Charge. ...................................................................5

IV.   Comparison of Jones' Positions, Merit Increases, and Pay,
      with Lori Davidson's. ...................................................................6

      A.   The City's Compensation Procedures. ...................................6

      B.   Jones. ....................................................................................8

      C.   Davidson. ..............................................................................9

V.    Jones' Requests for Accommodation. ...........................................10

VI.   Events Leading to Jones' Termination. ........................................13

      A.   Jones' Letter of Counseling. ..................................................13

      B.   The HUD Letter. ...................................................................13

      C.   Hardman's Investigation into the Basis for the ESG
           Expenditure Shortfall and Jones' Termination. ....................17

VI.   Jones' Claims in this Lawsuit. .....................................................18

VII.  Proceedings in the District Court. ...............................................19

SUMMARY OF ARGUMENT ................................................. 22

ARGUMENT ......................................................... 24

I.   The district court properly held that Jones waived all arguments involving exhaustion. .................................. 24

II.  The district court properly held that Jones failed to exhaust the majority of her discrimination and retaliation claims under Title VII, as well as her discrimination and failure to accommodate claims under the ADA. ....................................... 26

     A.   Jones failed to exhaust her Title VII race discrimination claims other than pay disparity. ................. 28

     B.   Jones failed to exhaust the only Title VII retaliation claim she pled in her lawsuit. ............................... 30

     C.   Jones failed to exhaust a claim for failure to accommodate under the ADA. .............................. 34

     D.   Jones fails to argue in her brief that she exhausted her claims for retaliation and discrimination under the ADA. ..................................................... 37

III. The district court properly held that the City was entitled to summary judgment on Jones' Title VII pay disparity claim. ......................................................... 39

     A.   Jones waived any argument that she established a prima facie case of pay disparity under Title VII................. 39

     B.   Even if Jones did not waive her pay disparity arguments, she failed to raise a fact issue as to her prima facie case. ................................................ 39

C.     Jones cannot establish that the City's non-discriminatory reasons for the pay differential were pretextual. ........................................................................ 42

IV.  The district court properly held that the City is entitled to summary judgment on the merits of Jones' Title VII retaliation claim. ........................................................... 44

     A.     Jones cannot make a prima facie case of retaliation because she cannot establish a causal relationship between the 2016 Lawsuit and her termination. ................. 45

     B.     The City had non-retaliatory reasons for terminating Jones, and Jones lacks substantial evidence of pretext. ................................................................. 48

V.   The district court properly held that the City is entitled to summary judgment on the merits of Jones' ADA claims. ............. 50

     A.     Jones cannot raise a fact issue that she established a claim for failure to accommodate. ......................................... 50

          1.     Jones does not have a disability related to asthma or allergies. ................................................... 51

          2.     Insofar as Jones claims that she could not perform the essential functions of her job unless she worked from home, she was not a qualified individual with a disability under the ADA. ............... 53

          3.     The City offered Jones reasonable accommodations, which she rejected. ........................... 56

     B.     Jones cannot raise a fact issue that she established a claim for disability retaliation. ............................................. 59

1.    Jones cannot establish a prima facie case of retaliation because she cannot demonstrate a causal relationship between her requests for accommodation and her termination............................ 60

2.    The City had non-retaliatory reasons for terminating Jones, and Jones failed to show substantial evidence of pretext. .................................. 63

C.    Jones cannot raise a fact issue that she established a claim for disability discrimination....................................... 63

1.    Jones cannot establish a prima facie case of discrimination. ............................................................. 64

2.    The City had non-discriminatory reasons for terminating Jones, and Jones lacks substantial evidence of pretext. .................................................... 66

CONCLUSION ........................................................................... 66

CERTIFICATE OF SERVICE................................................. 68

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) ...................... 69

# TABLE OF AUTHORITIES

## CASES

*A.M. Castle & Co. v. Byrne,*
  123 F. Supp. 3d 909 (S.D. Tex. 2015)...............................................54

*Acker v. Gen. Motors L.L.C.,*
  853 F.3d 784 (5th Cir. 2017) ..........................................................65

*Amedee v. Shell Chem., L.P.,*
  953 F.3d 831 (5th Cir. 2020) ..........................................................51

*Atkins v. Se. Cmty. Health Sys.,*
  712 F. App'x 388 (5th Cir. 2017).......................................... 47, 60, 65

*Avina v. JPMorgan Chase Bank, N.A.,*
  2010 WL 3505161 (S.D. Tex. Sept. 3, 2010) ...................................31

*Capps v. Mondelēz Global LLC,*
  147 F. Supp. 3d 327 (E.D. Penn. 2015).........................................65

*Cheek v. W. & S. Life Ins. Co.,*
  31 F.3d 497 (7th Cir. 1994) ............................................................31

*Clark v. Champion Nat'l Security, Inc.,*
  952 F.3d 570 (5th Cir. 2020) ..........................................................63

*Coleman v. Jason Pharmaceuticals,*
  540 F. App'x 302 (5th Cir. 2013) ....................................................45

*Credeur v. La. through Off. of Attorney Gen.,*
  860 F.3d 785 (5th Cir. 2017) .....................................................53, 54

*Cupit v. Whitley,*
  28 F.3d 532 (5th Cir. 1994) ............................................................24

*Cutrer v. Tarrant Cnty. Workforce Dev. Bd.,*
  No. 4:18-cv-00159, 2020 WL 5878458
  (N.D. Tex. Oct. 2, 2020)..................................................................35

*Das v. Am. Airlines, Inc.*,
No. 4:19-CV-870-A, 2020 WL 364264
(N.D. Tex. Jan. 21, 2020) .............................................................. 36

*Davenport v. Edward D. Jones & Co.*,
891 F.3d 162 (5th Cir. 2018) ......................................................... 29

*Del. State Coll. v. Ricks*,
449 U.S. 250 (1980) ....................................................................... 36

*Drake v. Spring Indep. Sch. Dist.*,
No. 20-20376, 2021 WL 3176081 (5th Cir. July 27, 2021) ............ 34

*Esaadi v. United Parcel Service, Inc.*,
No. 3:20-CV-1777, 2023 WL 2776081
(N.D. Tex. Mar. 2, 2023) ................................................................ 35

*Feist v. La., Dep't of Justice, Office of the Attorney Gen.*,
730 F.3d 450 (5th Cir. 2013) ......................................................... 51

*Fine v. GAF Chem. Corp.*,
995 F.2d 576 (5th Cir. 1993) ......................................................... 33

*Fort Bend County v. Davis*,
587 U.S. 541 (2019) ....................................................................... 27

*Freeman v. County of Bexar*,
142 F.3d 848 (5th Cir. 1998) ................................................... 24, 25

*Green v. United Parcel Serv., Inc.*,
847 F. App'x 207 (5th Cir. 2021) ................................................... 52

*Hamar v. Ashland, Inc.*,
211 F. App'x 309 (5th Cir. 2006) ................................................... 38

*Henderson v. City of Dallas*,
No. 3:16-cv-3317, 2018 WL 4326936
(N.D. Tex. Sept. 10, 2018) ............................................................. 35

*Henderson v. N.Y. Life, Inc.*,
   991 F. Supp. 527 (N.D. Tex. 1997) ................................................ 35

*Henson v. Bell Helicopter Textron, Inc.*,
   128 F. App'x 387 (5th Cir. 2005) .................................................. 34

*Jones v. City of Dallas*,
   No. 3:16-cv-02303-S, 2018 WL 2417853
   (N.D. Tex. May 29, 2018) ......................................................... 4, 5

*Jones v. City of Dallas*,
   No.3:16-cv-02303-S, 2018 WL 4644402
   (N.D. Tex. Aug. 3, 2018) ............................................................ 4

*Jurach v. Safety Vision, LLC*,
   642 F. App'x 313 (5th Cir. 2016) ................................................. 56

*Jurach v. Safety Vision, LLC*,
   72 F. Supp. 3d 698 (S.D. Tex. 2014) ........................................... 57

*Kaufman v. GMAC Mortg. Corp.*,
   No. 04–CV–5671, 2006 WL 1371185
   (E.D. Penn. May 17, 2006) ......................................................... 58

*King v. Life Sch., Inc.*,
   809 F. Supp. 2d 572 (N.D. Tex. 2011) ......................................... 27

*Lindsley v. TRT Holdings Inc*,
   No. 3:17-CV-02942-X, 2022 WL 824834
   (N.D. Tex. Mar. 18, 2022) ........................................................... 41

*Little v. Republic Refining Co.*,
   924 F.2d 93 (5th Cir. 1991) ......................................................... 50

*Long v. Eastfield Coll.*,
   88 F.3d 300 (5th Cir. 1996) .................................................... 44, 45

*McClain v. Lufkin Indus., Inc.*,
   519 F.3d 264 (5th Cir. 2008) ....................................................... 30

*McDonnell Douglas Corp. v. Green*,
411 U.S. 792 (1973) ................................................................ 44, 59

*McElroy v. PHM Corp.*,
622 F. App'x 388 (5th Cir. 2015) .................................................... 41

*Medina v. Ramsey Steel Co.*,
238 F.3d 674 (5th Cir. 2001) ........................................................ 46

*Melgar v. T.B. Butler Publ'g Co.*,
931 F.3d 375 (5th Cir. 2019) ........................................................ 38

*Mengistu v. Miss. Valley State Univ.*,
716 F. App'x 331 (5th Cir. 2018) ............................................... 41, 42

*Montgomery v. Clayton Homes Inc.*,
65 F. App'x 508 (5th Cir. 2003) .................................................... 40

*Moss v. Harris Cnty. Constable Precinct One*,
851 F.3d 413 (5th Cir. 2017) ........................................................ 64

*Owens v. Calhoun Cnty. Sch. Dist.*,
546 F. App'x 445 (5th Cir. 2013) .................................................. 64

*Pacheco v. Mineta*,
448 F.3d 783 (5th Cir. 2006) .................................................... 27, 32

*Phillips v. Caris Life Sciences, Inc.*,
715 F. App'x 365 (5th Cir. 2017) .................................................. 30

*Pittman v. Hattiesburg Mun. Separate Sch. Dist.*,
644 F.2d 1071 (5th Cir. 1981) ...................................................... 42

*PNC Bank, Nat'l Ass'n v. Ruiz*,
No. 22-50584, 2023 WL 3340078 (5th Cir. May 10, 2023) ............ 56

*Sanchez v. Standard Brands, Inc.*,
431 F.2d 455 (5th Cir. 1970) ........................................................ 27

*Seaman v. CSPH, Inc.*,
179 F.3d 297 (5th Cir.1999) ........................................................... 59

*Sherrod v. American Airlines, Inc.*,
132 F.3d 1112 (5th Cir. 1998) ................................................... 49, 59

*Smithson v. Union Pac. R.R. Co.*,
602 F. Supp.3d 974 (W.D. Tex. 2022) ........................................... 61

*St. John v. Sirius Sols., LLLP*,
299 F. App'x 308 (5th Cir. 2008) .................................................... 62

*Taylor v. Books A Million, Inc.*,
296 F.3d 376 (5th Cir. 2002) ........................................................ 27

*Taylor v. United Parcel Service, Inc.*,
554 F.3d 510 (5th Cir. 2008) ........................................................ 40

*Thompson v. Microsoft Corp.*,
2 F.4th 460 (5th Cir. 2021) ........................................................... 56

*U.S. v. Thames*,
214 F.3d 608 (5th Cir. 2000) .................................................. 26, 37

*Univ. of Tex. Sw. Med. Ctr. v. Nassar*,
570 U.S. 338 (2013) ...................................................................... 45

*Vuyanich v. Republic Nat'l Bank of Dall.*,
723 F.2d 1195 (5th Cir. 1984) ................................................. 27, 29

*Walker v. SBC Servs., Inc.*,
375 F. Supp. 2d 524 (N.D. Tex. 2005) ........................................... 54

*Wallace v. Methodist Hosp. Sys.*,
271 F.3d 212 (5th Cir. 2001) ........................................................ 42

*Windhauser v. Bd. of Supervisors for La. State Univ. & Ag. & Mech. Coll.*,
360 F. App'x 562 (5th Cir. 2010) ................................. 26, 35, 37, 66

*Young v. City of Houston*,
   906 F.2d 177 (5th Cir. 1990) ........................................................... 28

## STATUTES

42 U.S.C. § 12102 ....................................................................... 51

42 U.S.C. § 12111 ....................................................................... 53

42 U.S.C. § 12112 ....................................................................... 53

## ORDINANCES

DALLAS, TEX., CODE § 34-36 ....................................................... 13

No. 24-10803

# In the United States Court of Appeals for the Fifth Circuit

Jacqueline Jones,

Plaintiff – Appellant

v.

City of Dallas, Texas,

Defendant – Appellee

## BRIEF OF APPELLEE

TO THE HONORABLE FIFTH CIRCUIT COURT OF APPEALS:

Defendant-Appellee City of Dallas (the "City") files its response brief to the brief of Plaintiff-Appellant Jacqueline Jones. Because Jones failed to raise a material fact issue regarding her claims of discrimination and retaliation under Title VII ("Title VII") of the Civil Rights Act and the Americans with Disabilities Act ("ADA"), the district court appropriately granted the City's motion for summary judgment. Accordingly, the Court should affirm the district court.

## RESPONSE STATEMENT OF ISSUES

1.    The district court correctly granted the City's motion for summary judgment as to all of Jones' claims.

2.    The district court correctly rendered summary judgment for the City on all of Jones' claims under Title VII and the ADA—except for Jones' discriminatory pay disparity claim under Title VII—on failure-to-exhaust grounds.

3.    The district court correctly rendered summary judgment on Jones' Title VII pay disparity claim because Jones can neither establish a prima facie case of discrimination nor demonstrate that the City's nondiscriminatory reason for the pay disparity is pretextual.

4.    The district court correctly rendered summary judgment on Jones' Title VII retaliatory discharge claim because Jones can neither establish a prima facie case of retaliation nor demonstrate that the City's nonretaliatory reason for her termination is pretextual.

5.    The district court correctly rendered summary judgment on Jones' failure to accommodate claims under the ADA because Jones cannot establish she is a qualified individual with a disability and the City offered Jones reasonable accommodations, which she refused.

6.    The district court correctly rendered summary judgment on Jones' ADA discriminatory and retaliatory discharge claims because Jones can neither establish a prima facie case nor demonstrate that the City's nondiscriminatory and nonretaliatory reason for her termination is pretextual.

## STATEMENT OF THE CASE

## I.    Jones' Employment History and Reporting Structure.

The City hired Jones as a management assistant in the City Manager's Office on October 1, 2000. (ROA.149.) Jones voluntarily demoted to the position of contract compliance administrator on April 18, 2005. (ROA.211-12). She worked in that position until approximately 2018 (ROA.628-29), when she was assigned to the Office of Homeless Solutions ("OHS"), initially as a homeless solutions technician (ROA.149, 633.) Jones was reclassified to the position of contract solutions specialist on October 1, 2018 (ROA.149), where she remained until her termination on June 14, 2019. (*See* ROA.205.)

As a contract solutions specialist, Jones' job duties included monitoring contracts, tracking data-related system performance measures, evaluating, analyzing, and auditing non-compliance issues

3

and ensuring all programs were being administered in the system appropriately, reviewing contract budgets to confirm eligibility costs and alignment with program expectations, and evaluating subcontract reports and providing technical/fiscal assistance. (ROA.639-41.) At all relevant times, Jones reported to Operations and Performance Manager Erika Johnson, an African American female. (ROA.634-35.) Johnson reported to Director Monica Hardman, an African American female. (ROA.634-35.) Hardman reported to Assistant City Manager Nadia Chandler-Hardy, an African American female. (ROA.634-35.) Chandler-Hardy reported to City Manager TC Broadnax. (ROA.564-65.)

## II.    Jones' 2016 Lawsuit.

Jones filed a prior lawsuit against the City on August 9, 2016 (the "2016 Lawsuit"). *See Jones v. City of Dallas*, No. 3:16-cv-02303-S, 2018 WL 2417853 (N.D. Tex. May 29, 2018). The City was served on August 9, 2016. In the 2016 Lawsuit, Jones asserted claims under Title VII and the Equal Pay Act. *Id.* at *2. The district court entered final judgment in favor of the City on all claims on August 3, 2018. *See Jones v. City of Dallas*, No.3:16-cv-02303-S, 2018 WL 4644402 (N.D. Tex. Aug. 3, 2018).

At the time of the allegations in the 2016 Lawsuit, Jones was assigned to the City's Housing Department. *See Jones*, 2018 WL 2417853, at *1. None of the allegations concerned Jones' assignment with OHS. *See generally id.* (*See* ROA.633.) Hardman was unaware of the 2016 Lawsuit. (ROA.293-95.) Although Chandler-Hardy was aware of the 2016 Lawsuit, she did not know the basis of the lawsuit and did not believe it implicated her. (ROA.567-68.) There is no evidence that Johnson, Jones' supervisor, was aware of or had a negative opinion regarding the 2016 Lawsuit.  (*See* ROA.677.)

## III.  Jones' EEOC Charge.

Jones has filed two EEOC charges against the City, one before the 2016 Lawsuit and one related to this lawsuit. (ROA.636.) Jones filed her sole charge regarding this lawsuit on January 18, 2020. (ROA.274.) The substantive portion of Jones' charge states:

> PERSONAL HARM: Coworker, Lori Davison [sic] (White) and I were both promoted to Contract Solutions Specialists in or around August of 2018. I complained to HR, Nina Arias (on or around September 2019) about the unequal pay and nothing was done. Lori Davidson was being paid $86k and I was being paid $61,171 and we were in the same positions. I also asked and submitted multiple of [sic] reasonable accommodation requests and I received no response, no interactive process took place, and nothing was done. I was terminated in June

5

14th, [sic] 2019 in retaliation because of my complaints of unequal pay and requests for reasonable accommodations.

. . . .

DISCRIMINATION STATEMENT: I believe that I was discriminated against because of my Race (African American/Black), in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was discriminated against based on disability, in violation of the Americans with Disabilities Act of 1990. I believe that I was retaliated against in violation of Section 503(a) of the Americans with Disabilities Act of 1990, as amended.

(ROA.274-75.)

## IV.   Comparison of Jones' Positions, Merit Increases, and Pay, with Lori Davidson's.

### A.   The City's Compensation Procedures.

The City's procedures on wage and salary determination are in the City's Salary Administration Manual. (ROA.157-204.) The City's philosophy is to develop a flexible compensation system that rewards employees at varying levels of performance. (ROA.161.) During the relevant time period, positions within the City were assigned a letter grade. (ROA.149.) The City establishes a range for each letter grade, with a minimum and maximum salary, based on the market and the City's ability to pay. (ROA.149.)

When an employee's position is reclassified, as Jones' was, from homeless solutions technician (Grade H) to contract solutions specialist (Grade I), the employee does not receive a change in compensation *unless* the employee's salary is below the minimum range for the reclassified position.[1] (ROA.149, 153, 200, 615.) However, when an employee is promoted, the employee typically receives an 8% salary increase or the minimum increase above 8% that allows the employee to reach the minimum of the range. (ROA.192-193.) When reclassified to contract solutions specialist, Jones asserted that she should receive an 8% promotional increase. (ROA.615.) Her supervisor, Johnson, consulted with HR and explained that, under the City's procedures, Jones was not entitled to a pay increase because she was not being promoted. (ROA.615.)

The most important factor in determining where an employee's salary falls in the range is performance. (ROA.175.) When approved in the City's budget, civilian employees receive merit increases based on their fiscal year-end performance rating. (ROA.149, 181.) Although the

---

[1] The Salary Administration Manual refers to classifications to a lower or higher grade as downgrades and upgrades, respectively. (ROA.200.)

rating categories vary from year-to-year, the categories typically range from unsatisfactory to exceptional. (ROA.149-50.) Employees are usually awarded a merit increase between 0-6%, depending on their rating, with 3% being average. (ROA.150.)

## B.    Jones.

Jones' original position with the City—a management assistant with the City Manager's Office—did not involve contract administration. (*See* ROA.626-27.) When Jones voluntarily demoted to the position of senior contract compliance administrator in approximately April 2005, her new position was a lower salary grade (grade H), but Jones received no pay reduction. (*See* ROA.212.) Jones continued working in the same grade until her position was reclassified to a contract solutions specialist (grade I) in 2018. (ROA.149, 153, 206.) Because Jones was not below the minimum salary range for the position, she received no change in pay, in keeping with the Salary Administration Manual. (ROA.200, 334, 615.)

Jones' performance appraisal ratings have, with two exceptions, consistently been "Fully Successful," typically resulting in a 3% merit increase, when available. (ROA.150, 207-19, 225-28.) On one occasion (fiscal year 2007-2008), Jones received a "Partially Successful" rating,

resulting in a 2% merit increase. (ROA.150.) On another occasion (fiscal year 2009-2010), Jones received a "Highly Successful" rating; however, no civilian employees received a merit increase that year due to budgetary issues. (ROA.150.)

### C.  Davidson.

Lori Davidson began working for the City as a senior contract compliance administrator with the City's Environmental Health Services Department, effective November 24, 2003, at a starting salary of $48,800.00. (ROA.262.) On January 26, 2011, Davidson received a promotion, through a competitive process, to the position of coordinator 3, resulting in an 8% salary increase, per the City's procedures. (ROA.243-44.) In contrast to Jones, Davidson consistently earned performance ratings of "Distinguished," "Exceptional," "Superior," and "Highly Successful." (ROA.245-59, 263-71.) These ratings often resulted in merit increases of between 4-6%. (ROA.245-59, 263-71.) Once, Davidson's supervisor rated her "Distinguished, and then some," resulting in an 8% merit increase. (ROA.250-51.)

On October 1, 2018, Davidson's position was reclassified from a coordinator III to contract solutions specialist. (ROA.236.) Per the Salary

Administration Manual, Davidson did not receive a change in pay. (ROA.149, 200.) Both Jones and Davidson fell within the salary range for the position of contract solutions specialist. (ROA.149, 152.)

## V.     Jones' Requests for Accommodation.

Throughout her tenure with the City, Jones made requests for accommodation, which the City has either granted Jones' accommodation, as requested, or provided reasonable alternatives.

For example, when Jones worked in Housing, she asked not to be exposed to a high-capacity printer, due to a respiratory condition. (ROA.665-66.) The City moved the printer elsewhere. (ROA.666.) In addition, on September 25, 2018, all OHS staff were temporarily moved to an alternative location while their office space was renovated. (ROA.299.) Jones asked to be moved because the air quality in the temporary space was making her ill. (ROA.299-300, 362, 364.) Once Jones notified her supervisor of the concern, an alternative space was identified for her within the hour. (ROA.300.) Additionally, the City provided Jones with an ergonomic chair for her workspace as an accommodation. (*See* ROA.300.)

In November 2018, Jones requested a private enclosed office and provided a letter from her physician. (ROA.762.) Jones asserted her current work location triggered her PTSD. (ROA.762.) Specifically, Jones claimed that she had trouble concentrating due to ambient noise and becoming startled when she was approached from behind. (ROA.762-72.) She also claimed the orientation of her computer, which faced a concrete wall with holes in it, triggered her anxiety. (ROA.762-72.) Although there were no private offices available at that time, an HR representative immediately offered Jones the ability to reconfigure her monitors so that she no longer faced the wall and would not be approached from behind. (ROA.749-50.) Jones declined these accommodations. (*See* ROA.749-50.) In a subsequent meeting, HR offered Jones the option of moving to a different cubicle further from the water fountain, walkway, and utility closet, which she claimed contributed to the noise. (ROA.660-61, 752.) In addition, the cubicle would have a divider between her and the wall, so she would not have to look at the wall, and any cubicle could have been reconfigured so that Jones would not be approached from behind. (ROA.752, 755.) The proffered accommodation therefore addressed each of the concerns by Jones' therapist. (ROA.762-63.) Nevertheless, Jones

11

rejected the offered accommodation, provided her therapist with an inaccurate description of the offered accommodation, and asked her therapist to write a letter stating that Jones should work from home instead. (ROA.777.)

At the time of Jones' employment with OHS, in-office work was an essential function of the job, so Jones' request to work from home was denied. (ROA.301-02.) Instead, Jones received the option to relocate to a more interior cubicle, where she would not be facing the wall and could configure her monitor so as not to be approached from behind at any time. (ROA.752.) Thus, although Jones' requests for a private office and remote work could not be granted, other accommodations were provided.

Jones also raised concerns about fragrances. (ROA.300.) In response, on November 5, 2018, Hardman sent an email to all OHS staff directing them to "eliminate the use of fragrance plug-ins, diffusers, oil reeds, candles, etc. from your workstation. Several staff are sensitive to fragrance and/or have allergies that are easily aggravated." (ROA.303-04, 365.) Hardman also addressed the fragrance ban with staff during team meetings. (ROA.303.) Hardman reiterated the fragrance ban again in May 2019, connecting with the City's safety officer from the Office of

Risk Management, to carry out the safety officer's recommendation exactly. (ROA.304-05, 366, 779-80.)

## VI.    Events Leading to Jones' Termination.

### A.    Jones' Letter of Counseling.

On February 26, 2019, Johnson issued Jones a letter of counseling for arriving late or leaving early without proper notification and missing project deadlines. (ROA.619-20.) Johnson's letter of counseling stated that she had already received a verbal warning concerning her attendance on October 5, 2018. (ROA.616, 619.) Letters of counseling and verbal warnings are not formal disciplinary actions under the City's personnel rules,[2] but rather are used "to alert and inform" the employee of her need to improve prior to the issuance of formal discipline. (*See* ROA.620.)

### B.    The HUD Letter.

On around May 7, 2019, Hardman received a letter from the U.S. Department of Housing and Urban Development ("HUD"). (ROA.369-72.) The letter, titled Annual Community Assessment for the 2017 Program

---

[2] Formal disciplinary actions include reprimands, suspensions, demotion, or discharge. *See* DALLAS, TEX., CODE § 34-36(a)(2).

Year, included HUD's performance review of the City as a grant recipient of federal funds. (ROA.369-72.) It identified "Areas Needing Improvement and Recommendations," which included the following:

> **ESG Program Expenditure Deadline.** Based on drawdown information in IDIS, the city has drawn only 24 percent of its FY 2017 ESG grant of $3,117,540. To meet the 24-month expenditure deadline, $2,369,861 must be expended by October 19, 2019.

(ROA.371.) The ESG expenditure shortfall was the only area of improvement cited by HUD for OHS. (ROA.315-16.) Chandler-Hardy and Hardman considered the ESG expenditure shortfall "a very serious issue" because, if the funds were not expended within the allotted timeframe, HUD could recapture those funds and reduce the next year's allocation. (ROA.315.) Hardman explained, "it's very serious because it impacts the funding that we receive to be able to assist a population that is very critical. These were the funds for persons at risk or experiencing homeless[ness]." (ROA.315.) Chandler-Hardy identified the ESG expenditure shortfall as "critical." (ROA.590.)

Upon receiving the notification from HUD, Hardman "immediately" began working with Johnson and Jones to determine whether the vendors could expend the funds by the deadline. (ROA.318.) Hardman

14

wanted to determine what the challenges were, "because the main concern was trying to figure out is this money going to get spent, if not, what we could remedy to be able to expend it before the deadline so that HUD did not recapture the funds." (ROA.318.) Hardman worked with Johnson and Jones because "they were the two staff that were integrally involved in the specific contracts. So Ms. Jones was the lead project manager through being the contract solution specialist, and then Ms. Johnson was her direct supervisor." (ROA.318-19.) Hardman directed Jones to "provide a concise and consolidated summary to the City Manager's Office" with the "agency name, current expenditure rate/dollar amount, pending payments, and remaining funds that are not anticipated to be spent." (ROA.383.)

Hardman cited the issue of the ESG expenditure shortfall in a critical issues report to Chandler-Hardy on May 22, 2019, as an "immediate issue of concern." (ROA.316-18, 373-74.) Hardman stated:

1. Immediate Issues of Concern:

   a. Money left on the table: This is an update of my standing concern that has been on critical issue report. If we don't hit the June 26th agenda item, the 4 ESG proposals (Family Gateway, Family Place, Legal Aid, and Austin St) will not be able to expend funds by September 30th ($734,989). A new concern

> which has been brought to my attention this week is existing ESG contracts where vendors are coming in short on expending contracted amounts. I'm working with Ericka and Jacqueline to get a firm total (deadline tomorrow). Ericka believes it could be in the $500,000 range.

(ROA.374.) In response to Hardman's directive, Jones began to compile the information, which she provided almost a week after her deadline. (ROA.376-83.) Jones' final summary to Hardman indicated that many of the vendors could not spend any or all of the grant funds they received by the deadline. (ROA.376-83.)

> Ms. Hardman was:
>
> [V]ery shocked and disappointed because this information shouldn't have been found out this late in the game, in May when the funds had to be expended in October. This information should have been something that would have been picked up during conversations with the contractors and vendors through our normal contract compliance and monitoring visits, as well as just monitoring expenditure reports.

(ROA.320.) Jones acknowledged that she was responsible for conducting monitoring site visits. (ROA.639-41, 649-51.) The OHS procedures stated that contract solutions specialists are responsible for monitoring site visits. (ROA.348-50, 393-94.) As of May 21, 2019, Jones acknowledged that she had not conducted any monitoring visits for the ESG vendors,

and that she was in the "middle of establishing monitoring visits in June." (ROA.385-86.) Emails between Jones and Johnson show that Johnson repeatedly directed Jones to conduct the monitoring visits and submit her monitoring reports, that Jones was aware of her obligation, and that she did not meet it. (ROA.385-86, 443-44, 452-55, 462-68.) Had Jones timely conducted her monitoring visits and submitted her monitoring reports, the ESG expenditure shortfall would have been known before the HUD warning letter. (ROA.320.)

In addition to failing to perform the monitoring site visits and submit the reports, Jones was late providing contract documents to the City Attorney's Office, causing other potential expenditure concerns, which Hardman also pointed out in the critical issues report to Chandler-Hardy. (ROA.324, 374, 560.)

### C. Hardman's Investigation into the Basis for the ESG Expenditure Shortfall and Jones' Termination.

On June 5, 2019, Hardman asked Johnson to send her the monitoring forms/desk reviews that Jones had provided, as well as the staff responsibilities during monitoring visits/desk review. (ROA.384-85.) Hardman stated that she was "meeting with the CMO [City Manager's Office] in the next couple of days and I need to be able to walk them

17

through the ESG situation." (ROA.385.) The documentation provided largely consisted of communications with Jones, in which Jones admitted she had not yet scheduled *any* monitoring site visits. (ROA.384-386.) Accordingly, Johnson was unable to send Hardman the monitoring forms, because Jones had not submitted any "despite several asks." (ROA.384.) Johnson also attached numerous project status reports in which she directed Jones to conduct her monitoring site visits and submit the reports. (ROA.385-86, 443-44, 452-55, 462-67.)

Based on her review of the documentation provided by Johnson, Hardman determined that both Jones and Johnson were responsible for the expenditure shortfall, and, after consulting with Chandler-Hardy, terminated them both. (ROA.325.) During Hardman's approximately two years with the City, she terminated three additional employees, all for performance reasons. (ROA.325-26.) Hardman was not aware of any situation similar to the ESG expenditure shortfall during her tenure with the City. (ROA.329.)

## VI. Jones' Claims in this Lawsuit.

In her complaint, Jones alleged that the City discriminated against her based on race, particularly with respect to pay, comparing herself to

a White co-worker, Davidson. (ROA.13.) Jones further alleged that the City retaliated against her for filing the 2016 Lawsuit by terminating her employment. (ROA.17.) Jones also alleged that the City failed to accommodate her alleged disabilities of PTSD, asthma, and allergies. (ROA.11.) Finally, Jones alleged that the City terminated her in retaliation for requesting reasonable accommodations. (ROA.19.)

## VII.  Proceedings in the District Court.

On September 15, 2023, the City filed a motion for summary judgment, seeking final judgment in its favor. (ROA.89.) The City urged that it was entitled to summary judgement on Jones' discrimination claims because: (1) Jones failed to exhaust her administrative remedies for any discrimination claim other than pay; (2) Jones could not state a prima facie case for discrimination based on pay because she did not perform work requiring substantially the same responsibility as the employee to whom she compared herself; and (3) the City had nondiscriminatory reasons for the differential in pay. (ROA.90-91.) The City sought summary judgment on Jones' Title VII retaliation claim because: (1) Jones failed to exhaust her administrative remedies for the retaliation claim as pled in her complaint; (2) Jones could not state a

prima facia claim of retaliation because she could not show a causal connection between her protected activity and her termination; and (3) the City had nonretaliatory reasons for terminating Jones. (ROA.91.) The City sought summary judgment on Jones' failure to accommodate claim because: (1) Jones failed to exhaust her administrative remedies for failure to accommodate; (2) Jones was not a qualified individual under the ADA; and (3) the City either accommodated Jones as requested or offered her reasonable alternatives. (ROA.91.) The City sought summary judgment on Jones' retaliation claim under the ADA because: (1) Jones could not state a prima facia case of disability retaliation because she could not show that her termination was the result of her engaging in protected activity; and (2) the City had nonretaliatory reasons for terminating Jones' employment. (ROA.91.) Finally, to the extent Jones alleged a claim for disability discrimination, the City sought summary judgment based on failure to exhaust, lack of causation, and because the City had a nondiscriminatory reason for terminating Jones. (ROA.91.)

Jones filed a response to the City's motion. (ROA.1093-109.) Therein, Jones attempted to respond to some of the City's merits-based arguments but made no effort to refute the City's assertion that she failed

to administratively exhaust administrative remedies for the vast majority of her claims. (ROA.1093-109.)

The district court referred the City's motion to the magistrate judge for proposed findings and recommendations (ROA.1140-41), and the magistrate judge recommended that the court grant the City's motion for summary judgement in its entirety (ROA.1143-76.) Jones objected to the magistrate judge's report and recommendation. (ROA.1184-208.) In her objections, Jones raised new legal and factual arguments that were not contained in her original response. (*Compare* ROA.1093-109, *with* ROA.1184-208.) Notably, Jones argued for the first time in her objections that she had administratively exhausted all her claims. (ROA.1197-200.) The district court held that Jones waived the new arguments not included in her original response, but that, even if not waived, found no error in the magistrate judge's merits analysis. (ROA.1262-65.) The district court accepted the magistrate judge's report and recommendation, overruled Jones' objections, granted the City's motion, and entered final judgment for the City. (ROA.1262-66.)

## SUMMARY OF ARGUMENT

This Court should affirm the judgement of the district court because Jones has failed to raise a material fact issue with respect to her Title VII and ADA claims. As an initial matter, this Court should affirm summary judgment on Jones' claims for Title VII discrimination (other than pay disparity), Title VII retaliation, failure to accommodate under the ADA, and disability discrimination under the ADA based on failure to exhaust because she failed to address the City's arguments on exhaustion in her Response and therefore waived argument on this ground. Next, the Court should affirm summary judgment as to these claims for the additional reason that Jones failed to exhaust them as a matter of law. Further, Jones failed on appeal to argue that she exhausted her claims for disability retaliation and disability discrimination under the ADA, again waiving argument. With respect to Title VII pay disparity, the Court should affirm summary judgment because: (1) Jones waived an argument that she established a prima facie case of pay disparity under Title VII; (2) Jones failed to raise a material fact issue as to her prima facie case because she failed to name a proper comparator; and (3) the City had non-discriminatory reasons for the pay

differential, for which Jones also waived argument. With respect to Title VII retaliation, the Court should affirm summary judgment because: (1) Jones cannot state a prima facie case of retaliation because she cannot establish a causal relationship between her filing a lawsuit and the termination of her employment; and (2) the City had non-retaliatory reasons for the termination of Jones' employment. With respect to Jones' claims under the ADA, the Court should affirm summary judgment because: (1) Jones cannot raise a material fact that she established a claim for failure to accommodate on multiple grounds; (2) Jones cannot state a prima facie case of disability retaliation because she cannot establish a causal relationship between her filing a lawsuit and the termination of her employment; (3) Jones cannot state a prima facie case of disability discrimination because she cannot establish a causal relationship between her disability and the termination of her employment; and (4) the City had non-discriminatory and non-retaliatory reasons for the termination of Jones' employment.

# ARGUMENT

## I. The district court properly held that Jones waived all arguments involving exhaustion.

The district court held that the City was entitled to summary judgment on all Jones' claims except her unequal pay claim under Title VII because Jones failed to exhaust her administrative remedies with the EEOC. (*See* ROA.1262-63.) In doing so, it reasoned, in part, that Jones waived all arguments concerning exhaustion. (ROA.1263.) Jones wholly failed to respond to the City's exhaustion arguments in the proceedings before the magistrate judge (*see* ROA.1093-109) and instead argued that she had exhausted her administrative remedies for the first time in her objections to the report and recommendation (*see* ROA.1197-200). Accordingly, the district court held that "the exhaustion arguments [Jones] asserts now for the first time in objecting to the magistrate judge's Report are **waived**." (ROA.1263.)

"[A] party who objects to the magistrate judge's report waives legal arguments not made in the first instance before the magistrate judge." *Freeman v. County of Bexar*, 142 F.3d 848, 851 (5th Cir. 1998) (citing *Cupit v. Whitley*, 28 F.3d 532, 535 (5th Cir. 1994)). Here, Jones failed, in her response to the City's motion for summary judgment, to address any

24

of the City's arguments regarding exhaustion. (*See* ROA.1093-109.) Indeed, her original response does not include the words "EEOC," "exhaust," or any approximation thereof, despite the City moving for summary judgment based on exhaustion for the majority of Jones' claims. (*See* ROA.1093-109, 1263.) Thus, under this Court's precedent, the district court correctly held that Jones waived any argument concerning exhaustion. *See, e.g.*, *Freeman*, 142 F.3d at 851.

In this Court, Jones attempts to address waiver in a footnote of her brief, arguing that the magistrate-reference statute allows the district court to receive further evidence. (Appellant's Br. 14 n.1.) However, courts have distinguished new evidence from new legal arguments. *Freeman*, 142 F.3d at 851-853 (explaining that, whereas legal arguments not presented to the magistrate judge are waived, district courts have discretion to consider new evidence). Jones also asserts that her objections to the magistrate judge's findings and conclusions were timely; however, Jones' new legal arguments were not waived because they were untimely—they were waived because they were not properly before the district court in the first place. *See Freeman*, 142 F.3d at 851. Notably, Jones does not assert that she argued exhaustion in her response, tacitly

25

conceding that she failed to address exhaustion until she objected to the magistrate judge's report and recommendation. (*See* Appellant's Br. 14-18.) Accordingly, this Court should affirm the judgment of the district court as to all Jones' claims that she failed to exhaust before the EEOC because Jones waived any arguments on exhaustion by failing to include them in her response to the City's summary judgment motion.

## II. The district court properly held that Jones failed to exhaust the majority of her discrimination and retaliation claims under Title VII, as well as her discrimination and failure to accommodate claims under the ADA.

The district court held that, even assuming Jones had not waived her arguments concerning exhaustion, there was no error in the magistrate judge's findings and conclusions regarding this issue.[3]

---

[3] The City agrees with the magistrate judge's finding that Jones failed to exhaust her claim for disability retaliation. (ROA.1153-11540.) However, the City did not argue in its motion for summary judgment that Jones failed to exhaust her disability retaliation claim with respect to her termination based on a request for reasonable accommodations. (*See* ROA.140.) The City asserted (and maintains) that Jones failed to exhaust any other ground for disability retaliation. (ROA.140.) Nevertheless, Jones has never argued that the district court erred in granting summary judgment on a basis not moved for by the City and has therefore waived argument on this ground. (*See generally* Appellant's Br.) *Windhauser v. Bd. of Supervisors for La. State Univ. & Ag. & Mech. Coll.*, 360 F. App'x 562, 565 (5th Cir. 2010) (citing *U.S. v. Thames*, 214 F.3d 608, 611 n.3 (5th Cir. 2000)) ("An appellant who fails to properly brief an issue before this court waives it."). Further, any potential error in the district court's entry of summary judgment on her ADA retaliatory discharge claim on exhaustion grounds is harmless, as the City established it was entitled to summary judgment on the merits, which the City discusses more fully below. The magistrate judge

26

Although Jones' waiver is dispositive, the City addresses the substance of Jones' exhaustion arguments in an abundance of caution.

The exhaustion of administrative remedies is a precondition to filing suit. *See Fort Bend County v. Davis*, 587 U.S. 541, 552 (2019). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002). Any resulting suit, although not precisely confined to a plaintiff's averments in his charge, is limited to the scope "of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970); *see Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). "This reasonable expectation rule requires that the allegations in a subsequent judicial complaint be 'like or related to' allegations made in the EEOC charge." *King v. Life Sch., Inc.*, 809 F. Supp. 2d 572, 579-80 (N.D. Tex. 2011) (Ramirez, Mag. J.) (quoting *Vuyanich v. Republic Nat'l Bank of Dall.*, 723 F.2d 1195, 1201 (5th Cir. 1984)). Matters falling outside of the EEOC's expected

---

recommended, and the district court granted, summary judgment on the City's alternative merits-based grounds. (ROA.1172-1174, 1262.)

investigation into a plaintiff's charge are not to enter the federal courts. *See Young v. City of Houston*, 906 F.2d 177, 179-80 (5th Cir. 1990).

## A. Jones failed to exhaust her Title VII race discrimination claims other than pay disparity.

In her brief, Jones asserts that the magistrate judge and district court erred in finding that Jones failed to exhaust her administrative remedies with respect to all her race discrimination claims under Title VII except her pay disparity claim. (Appellant's Br. 14-18.) However, Jones does not explain what and how her discrimination claims, other than pay disparity, were exhausted. (*Id.*) Jones' charge stated, in its entirety, as follows:

> PERSONAL HARM: Coworker, Lori Davison [sic] (White) and I were both promoted to Contract Solutions Specialists in or around August of 2018. I complained to HR, Nina Arias (on or around September 2019) about the unequal pay and nothing was done. Lori Davidson was being paid $86k and I was being paid $61,171 and we were in the same positions. I also asked and submitted multiple of [sic] reasonable accommodation requests and I received no response, no interactive process took place, and nothing was done. I was terminated in June 14th, 2019 [sic] in retaliation because of my complaints of unequal pay and requests for reasonable accommodations.
>
> RESPONDENT'S REASON FOR ADVERSE ACTION: None Given
>
> DISCRIMINATION STATEMENT: I believe that I was discriminated against because of my Race (African

28

American/Black), in violation of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was retaliated against in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended. I believe that I was discriminated against based on disability, in violation of the Americans with Disabilities Act of 1990. I believe that I was retaliated against in violation of Section 503(a) of the Americans with Disabilities Act of 1990, as amended.

(ROA.274.)

Because the charge alleges facts that Jones, an African American female, was paid less than Davidson, a White female, the City agrees that Jones exhausted a claim for pay disparity under Title VII. However, there are no other allegations in the charge related to race discrimination. The question for the Court is whether Jones alleged in her complaint any claims "like or related to" the allegations made in the EEOC charge. *Vuyanich*, 723 F.2d at 1201. In her brief, Jones does not attempt to articulate any race discrimination allegations she believes are like or related to her pay discrimination claim. To the extent the Court considers claims for harassment or discharge, which are referenced in the complaint, these claims were not exhausted because Jones did not allege any facts in her charge "like or related to" harassment or discharge based on discrimination. *See Davenport v. Edward D. Jones & Co.*, 891 F.3d 162, 168 (5th Cir. 2018) (affirming dismissal of constructive discharge

claim where claimant alleged that she took a leave of absence due to inappropriate sexual comments, but did not allege facts suggesting that she endured severe or pervasive harassment); *Phillips v. Caris Life Sciences, Inc.*, 715 F. App'x 365, 369 (5th Cir. 2017) (affirming dismissal of sex discrimination claim based on discharge where claimant told EEOC that she was terminated based on *complaining* about sexual harassment, not based on sex). Accordingly, this Court should affirm the judgment of the district court because Jones failed to show that she has exhausted her Title VII race discrimination claims other than pay disparity.

## B.    Jones failed to exhaust the only Title VII retaliation claim she pled in her lawsuit.

The City established in its motion for summary judgment that Jones failed to plead a retaliation claim in her lawsuit that was "like or related" to the claims in her charge because her charge and her complaint rely on entirely different protected activities.[4] (ROA.126-128); *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008). "A discriminatory

---

[4] To the extent Jones alleges adverse actions other than retaliation, these were not exhausted. (ROA.274,) And Jones waived any argument that they were. (*Compare* ROA.126n.1 *with* 1097-1108.)

act alleged in a lawsuit but not included in an EEOC charge is not 'like or related to' acts that are alleged in an EEOC charge simply because both are based on the same type of discrimination." *Avina v. JPMorgan Chase Bank, N.A.*, 2010 WL 3505161, at *6 (S.D. Tex. Sept. 3, 2010), *aff'd*, 413 F. App'x 764 (5th Cir. Feb. 23, 2011). Rather, "[t]he claims are not alike or reasonably related unless there is a factual relationship between them. This means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994).

Here, there is no dispute that Jones' complaint alleges she was fired in retaliation for bringing a prior lawsuit based on a failure to be promoted, while, in contrast, her charge alleges that she was fired in retaliation for making internal complaints regarding unequal pay. (*Compare* ROA.8-21, *with* ROA.274-75.) Jones cites no authority that would disturb the district court's determination that Jones failed to exhaust the Title VII retaliation claim she pled. Rather, Jones asserts, without authority, that the EEOC did a bad job in drafting the charge and Jones should not be punished for the EEOC's drafting. (Appellant's

31

Br. 16.) Jones also asserts that, because her 2016 Lawsuit involved promotions and promotions typically involve a pay increase, her 2016 Lawsuit regarding her failure to be promoted was like or related to her internal complaints that she was paid less than a co-worker in the same position. (*Id.* at 17.) Neither argument has merit.

With respect to Jones' claim that the EEOC inadequately drafted her charge, this is both irrelevant and unsupported by the record. The evidence cited by Jones indicates that the charge was drafted based on information provided by Jones and that she was to review the charge and make any corrections needed. (ROA.279.) Moreover, this Court has acknowledged that many claimants are unsophisticated and take this fact into account in setting the scope of the exhaustion requirement under Title VII. *See Pacheco*, 448 F.3d at 788-89 (balancing the scope of the exhaustion requirement with the fact that most charges are initiated pro se with the purpose of Title VII to trigger the investigatory and conciliatory procedures of the EEOC). The fact that Jones was pro se, like most claimants, when she filed her charge does not entitle her to a lower standard. *See id.*

Regarding Jones' second argument, that her claim she was retaliated against for bringing the 2016 Lawsuit is "like or related to" her allegation that she was retaliated against for internally complaining that she was paid less than a co-worker, her assertion is not supported. Jones does not explain how an investigation for retaliatory discharge based on her internal complaint in September 2019 "to Nina Arias of Human Resources" regarding Davidson, a coworker, receiving higher pay (ROA.274), could have led to an investigation for retaliatory discharge based on the 2016 Lawsuit. As there is no factual relationship between Jones' alleged internal complaints of unequal pay compared to Davidson and the filing of her 2016 Lawsuit, Jones' allegation of retaliatory discharge resulting from the 2016 Lawsuit could not have been expected to grow out of her charge. *See Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (concluding that a charge alleging several denials of promotions did not exhaust additional denials of promotions not included in the charge). Accordingly, this Court should affirm summary judgment as to Jones' Title VII retaliation claim due to failure to exhaust.

### C.    Jones failed to exhaust a claim for failure to accommodate under the ADA.

In its summary judgment motion, the City explained that Jones failed to exhaust a claim for failure to accommodate because: (1) her charge contained no factual allegations regarding a request to accommodate; and (2) her charge was untimely. (ROA.134-36.) In her objections to the magistrate judge's report and recommendation (ROA.1199-200) and brief to this Court (Appellant's Br. 18-19), Jones asserts that she exhausted her failure to accommodate claim because (1) an agent of the EEOC drafted Jones's charge so it is the EEOC's fault her charge was not more specific; and (2) her charge was timely because her efforts to obtain an accommodation "continued within 300 days of her termination" (*id.*). Jones is wrong.

Requests for accommodation are discrete acts, and each request must be independently exhausted. *Henson v. Bell Helicopter Textron, Inc.*, 128 F. App'x 387, 391 (5th Cir. 2005). A request for an accommodation based on a particular condition will not exhaust a request for an accommodation for a different condition. *See Drake v. Spring Indep. Sch. Dist.*, No. 20-20376, 2021 WL 3176081, at *4 (5th Cir. July 27, 2021) (exhaustion of one incident of failure to accommodate did not

exhaust a separate incident); *Windhauser*, 360 F. App'x 562 (affirming refusal to consider specific failure to accommodate claim that was not included in EEOC charge); *Henderson v. City of Dallas*, No. 3:16-cv-3317, 2018 WL 4326936, at *10 (N.D. Tex. Sept. 10, 2018) (granting summary judgment for failure to accommodate claims that were not included in the EEOC charge). For example, in *Cutrer v. Tarrant County Workforce Development Board*, the court determined that a request for an accommodation for an anxiety disorder was not exhausted by a charge alleging a request for a separate physical limitation. No. 4:18-cv-00159, 2020 WL 5878458, at *6 (N.D. Tex. Oct. 2, 2020). And in *Henderson v. N.Y. Life, Inc.*, the court held that filing a charge over an air vent accommodation based on plaintiff's sinusitis did not exhaust remedies regarding a work-from-home accommodation claim based on an immune deficiency disorder. 991 F. Supp. 527, 542 (N.D. Tex. 1997). Moreover, a charge must contain basic facts, such as dates, explaining the claims. *Esaadi v. United Parcel Service, Inc.* No. 3:20-CV-1777, 2023 WL 2776081, *2-3 (N.D. Tex. Mar. 2, 2023) (collecting cases).

Although Jones blames the EEOC for the lack of specificity in her charge, she reviewed and signed the charge under penalty of perjury. (*See*

ROA.275.) Further, Jones does not allege that she actually informed the EEOC of the failure to accommodate claims at issue or provided the EEOC with sufficient information with which to investigate. (*See* Appellant's Br. 18-19.)

With respect to Jones' argument that she "continued" her efforts to "get an accommodation," a continued or renewed request does not render her claim timely. The City proffered its alternative accommodations to Jones' requests on December 19, 2018, which she declined via email on December 21, 2018.[5] (ROA.782.) Jones filed her charge on January 18, 2020, more than 300 days later. (ROA.274.) "[A]n employer standing by a prior denial after an employee requests reconsideration neither constitutes a discrete act nor extends the filing period." *Das*, 2020 WL 364264, at *3. Further, Jones does not provide dates for any such requests, making it impossible to even analyze whether her claim could

---

[5] Jones does not argue that her request on January 4, 2019 to work from home constituted a discrete act. (Appellant's Br. 18-19.) Moreover, such request would still be beyond the 300 day threshold. *See Das v. Am. Airlines, Inc.*, No. 4:19-CV-870-A, 2020 WL 364264, at *3 (N.D. Tex. Jan. 21, 2020) (citing *Del. State Coll. v. Ricks*, 449 U.S. 250, 261 n.15 (1980) ("Because plaintiff began requesting the accommodations in July 2016, a charge alleging failure to accommodate was due, at the latest, by May 27, 2017, three hundred days after the last day of July 2016.").

be timely. (Appellant's Br. 18-19.) Accordingly, this Court should affirm

dismissal of Jones' failure to accommodate claim.

### D. Jones fails to argue in her brief that she exhausted her claims for retaliation and discrimination under the ADA.

The district court entered summary judgment for the City on Jones'

discrimination and retaliation claims under the ADA on failure-to-

exhaust grounds. (ROA.1152-56, 1262-63.) Although Jones has a section

in her brief captioned "Jones Exhausted Administrative Remedies under

the ADA," she only addresses her failure to accommodate claim.

(Appellant's Br. 18-19.) Jones' briefing omits any argument that she

exhausted her ADA claims for discrimination or retaliation under the

ADA. (*Id.*) "An appellant who fails to properly brief an issue before this

court waives it." *Windhauser*, 360 F. App'x at 565 (citing *U.S. v. Thames*,

214 F.3d 608, 611 n.3 (5th Cir. 2000)).

Even were the Court to construe Jones' argument broadly enough

to include her discrimination and retaliation claims, she has not provided

any reason to reverse. Failure to accommodate, disparate treatment, and

retaliation "represent distinct categories of disability discrimination

under the ADA." *Hamar v. Ashland, Inc.*, 211 F. App'x 309, 310 (5th Cir.

2006) (analyzing failure to accommodate and disparate treatment claims). The EEOC cannot reasonably have been expected, when presented with a claim alleging retaliation under the ADA, to investigate a distinct claim for discrimination under the ADA. *Id.*

Here, Jones' charge alleges only that she "was terminated in June 14th, 2019 [sic] in retaliation because of my complaints of unequal pay and requests for reasonable accommodations." (ROA.274.) Jones does not allege that she had a disability or that she was discriminated against based on that disability. (*See* ROA.274.) Although, in her discrimination statement, Jones uses the generic statement that she believes that she was "discriminated against based on disability, in violation of the Americans with Disabilities Act of 1990," such bare assertion, with no facts, is insufficient to exhaust a claim. *Melgar v. T.B. Butler Publ'g Co.*, 931 F.3d 375, 379 (5th Cir. 2019) (noting that it is an "obvious proposition that the crucial element of a charge of discrimination is the factual statement contained therein"). Accordingly, to the extent Jones' complaint alleges a discrimination claim under the ADA, the Court should affirm the district court's entry of summary judgment.

### III. The district court properly held that the City was entitled to summary judgment on Jones' Title VII pay disparity claim.

#### A. Jones waived any argument that she established a prima facie case of pay disparity under Title VII.

As demonstrated to the district court (ROA.121-23) and fully explained below, the City is entitled to summary judgment on Jones' Title VII pay disparity claim because Jones cannot establish a prima facie case. Jones waived argument that she established a prima facie case of pay disparity under Title VII for two reasons. First, she failed to respond to the City's specific arguments in her response to the City's motion for summary judgment. (ROA.1105.) Next, in this Court, Jones continues to ignore the bulk of the City's arguments as to why Davidson is not a proper comparator, including that Davidson performed additional job duties and was hired at a different time and into a different position and department than Jones. (*Compare* ROA.121-23, *with* Appellant's Br. 19-21.)

#### B. Even if Jones did not waive her pay disparity arguments, she failed to raise a fact issue as to her prima facie case.

To establish a prima facie case of pay disparity, a plaintiff must show that she performed work requiring substantially the same responsibility as a comparator outside of the plaintiff's protected class.

*Taylor v. United Parcel Service, Inc.*, 554 F.3d 510, 522 (5th Cir. 2008). The plaintiff must show that her "circumstances are 'nearly identical' to those of a better-paid employee who is not a member of the protected class." *Id.* The City's summary judgment motion demonstrated that Jones' and Davidson's circumstances were not nearly identical and, therefore, Davidson is not a proper comparator.

Jones' sole argument is that Jones and Davidson held the same job title. (*See* Appellant's Br. 19-21.) This is insufficient. Although Jones and Davidson held the same job title, this Court "has stated that the job content and actual job requirements, not the job title, classification or description, are determinative." *Montgomery v. Clayton Homes Inc.*, 65 F. App'x 508, *2 (5th Cir. 2003). The City submitted undisputed evidence that Davidson performed additional job duties, including staffing boards and commissions, such as the community advisory board through the planning department, and was considered a subject-matter expert in terms of HUD regulations. (ROA.312-14.) To complete her duties and responsibilities, Davidson routinely worked twelve-hour days. (ROA.312-14.) In contrast, Jones "worked her shift" and left. (ROA.313.) Accordingly, Davidson's job duties were not the same as Jones'.

40

(ROA.312-14.) Jones does not contend that she performed any of these duties or worked similar hours to Davidson. Jones' exclusive reliance on a shared job title does not overcome the City's entitlement to summary judgment because "without more, job titles and descriptions are insufficient evidence that the employees are nearly identical." *Lindsley v. TRT Holdings Inc*, No. 3:17-CV-02942-X, 2022 WL 824834, at *4 (N.D. Tex. Mar. 18, 2022). Jones cites no legal authority to support her contention that Davidson is an appropriate comparator. (Appellant's Br. 19-21.)

Further, the City explained that employees hired several years apart into different positions means that their circumstances are not nearly identical, and they are not proper comparators. *See Mengistu v. Miss. Valley State Univ.*, 716 F. App'x 331, 334 (5th Cir. 2018); *cf. McElroy v. PHM Corp.*, 622 F. App'x 388, 392 (5th Cir. 2015) (noting that coworkers are not appropriate comparators where they "had been hired at different times and had different positions"). The City hired Jones and Davidson three years apart, into different positions and departments, and they had very different career trajectories before ultimately being assigned to the same role through reclassifications. (ROA.148-50, 206,

212-13, 236, 243-44, 262, 626-27.) Further, Davidson's salary was funded through a federal grant, making the funding source different from Jones' salary. (ROA.311.) Accordingly, Jones and Davidson are not proper comparators for these additional reasons, and the district court correctly held Jones failed to establish her prima facie case.

### C. Jones cannot establish that the City's non-discriminatory reasons for the pay differential were pretextual.

If a plaintiff establishes a prima facie case of discrimination, the defendant must articulate non-discriminatory reasons for any pay disparity. *Mengistu*, 716 F. App'x at 334. To rebut any articulated legitimate reason, a plaintiff must demonstrate pretext with "substantial evidence." *Id.* (citing *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 220 (5th Cir. 2001)). The plaintiff may do so by showing that a discriminatory motive is more likely than a nondiscriminatory one, "or that [her employer's] explanation is unworthy of credence." *Id.* "A sufficient showing of a significant difference in the quality of job performance would constitute a legitimate nondiscriminatory reason for the employer's action in rebuttal of the prima facie case." *Pittman v. Hattiesburg Mun. Separate Sch. Dist.*, 644 F.2d 1071, 1074 (5th Cir. 1981).

All the reasons that Davidson is not a proper comparator to Jones—especially Davidson's superior job performance—are non-discriminatory reasons for Davidson's higher pay. Jones fails to address the City's primary reason for the pay differential: performance. Rather, she appears to argue that the City's reasons are pretextual because both Jones and a new hire, Anita Crethers, made less than Davidson. Jones argues, without any authority, that because Crethers did not receive Davidson's salary after Davidson left the department, the City's reasons must be pretextual. (Appellant's Br. at 21.) Jones' argument misses the mark. Crethers was a brand-new employee hired in March 2019, and therefore did not receive the same salary as Davidson, a seasoned stellar employee. Indeed, Jones was also paid more than Crethers (ROA.274, 919).

Rather than address the City's primary explanations for the pay differential, Jones asserts, in a conclusory fashion, that she and Davidson shared similar education and experience. Even accepting Jones' contention as true, education and experience are only two factors. The City provided many factors to explain the pay differential, including the funding source for Davidson's position, her greater job responsibilities

and longer work hours, her prior career trajectory, and her job performance, which Jones fails to address. (*See generally* Appellant's Br.) Accordingly, Jones has not shown pretext, and the district court's judgment should be affirmed on this additional basis.

## IV.  The district court properly held that the City is entitled to summary judgment on the merits of Jones' Title VII retaliation claim.

Jones claims that the City retaliated against her by terminating her employment for filing the 2016 Lawsuit.[6] To state a prima facie case of retaliation under Title VII, Jones must demonstrate that (1) she engaged in activity protected by Title VII, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment action. *Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996).

If the plaintiff establishes a prima facie case of retaliation, the burden of production shifts to the employer to state a nonretaliatory reason for the employment action. *See, e.g.*, *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the City meets its production

---

[6] For the reasons explained in sections I and II.B above, the Court should affirm the district court's summary judgment on Jones' Title VII retaliatory discharge claim on failure-to-exhaust grounds.

burden, Jones must produce evidence that retaliation, rather than the City's proffered reason, was the "but-for cause" of the adverse action. *See Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352 (2013) ("Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action.") "In order to avoid summary judgment, the plaintiff must show 'a conflict in substantial evidence' on the question of whether the employer would not have taken the action 'but for' the protected activity." *Coleman v. Jason Pharmaceuticals*, 540 F. App'x 302, 304 (5th Cir. 2013) (quoting *Long*, 88 F.3d at 308).

## A.    Jones cannot make a prima facie case of retaliation because she cannot establish a causal relationship between the 2016 Lawsuit and her termination.

The City negated the causation element of Jones' prima facie case because: (1) Hardman, the decision maker for Jones' termination, lacked knowledge of the 2016 Lawsuit; (2) there was a lack of temporal proximity between the 2016 Lawsuit and Jones' termination; and (3) Jones' supervisor, Johnson, was terminated for failing to supervise Jones as part of the same incident for which Jones was terminated. (ROA.128-30.) In the district court, Jones waived *any* argument as to causation, as

45

the entirety of her briefing on her retaliatory discharge claim was three conclusory sentences without citation to legal authority or evidence. (ROA.1108.) In an abundance of caution, the City will address Jones' appellate arguments.

With respect to Hardman's lack of knowledge as to her prior lawsuit, Jones fails to dispute the City's evidence. Instead, she attempts to argue a claim that is not included in her complaint—that her direct supervisor, Johnson, retaliated against her based on her complaining about her pay.[7] (Appellant's Br. 22.) But it is undisputed that Johnson did not decide to terminate Jones, Hardman did. (ROA.293-294.) *See Medina v. Ramsey Steel Co.*, 238 F.3d 674, 684 (5th Cir. 2001) ("A 'causal link' is established when the evidence demonstrates that 'the employer's decision to terminate was based in part on knowledge of the employee's

---

[7] Jones's only allegation in her complaint regarding a complaint of equal pay is that she "complained that her pay should be the same as the others." [Compl. ¶ 3.05.] Such allegation is insufficient to allege that Jones engaged in protected activity under Title VII, because she does not assert that she complained of discrimination. *Gaspari v. FMC Techs., Inc.*, No. CV H-13-2353, 2016 WL 1055642, at *13 (S.D. Tex. Feb. 4, 2016), *report and recommendation adopted*, No. 4:13-CV-02353, 2016 WL 1070859 (S.D. Tex. Mar. 15, 2016) ("Title VII protects only opposition to discrimination based on race, color, religion, sex, or national origin. . . . Magic words are not required, but protected opposition must at least alert an employer to the employee's reasonable belief that unlawful discrimination is at issue."). Jones waived argument to the contrary. (ROA.1097-1108.)

46

protected activity.'") Regardless, at best, such claim would be limited to the lack of a 3% raise after Jones' position was reclassified, which was due to a non-retaliatory, non-discriminatory reason, as the City's procedures dictate there is no pay raise for position reclassifications, unless an employee's pay would fall below the salary range for the reclassified position. (*See* ROA.149, 200, 239.)

Next, with respect to temporal proximity, Jones, citing no case law, contends that "the very act of continuing a lawsuit" should be counted as protected activity. This is contrary to the law. *See Atkins v. Se. Cmty. Health Sys.*, 712 F. App'x 388, 391 (5th Cir. 2017) (stating that the date employer became aware of plaintiff's charge was the operative date for determining temporal proximity, rather than time period in which EEOC charge was pending). And Jones fails to address the City's argument that, even the *conclusion* of the 2016 Lawsuit would be too remote in time from Jones' termination ten months later to support temporal proximity. *Id.* (noting that a "five months lapse was, on its own, insufficient to permit a reasonable jury to find that employee had demonstrated a causal link"). Instead, Jones attempts to assert waived and unexhausted claims of harassment and denial of accommodations as retaliation for complaining

47

of pay disparity.[8] (*See* ROA.8-21.) The Court should disregard these unasserted, unexhausted, waived claims.

Finally, Jones attempts to use an investigation, which sustained no rule violations, to argue that "Hardman's motives for firing [Johnson] cannot be presumed to be the same." (Appellate Br. 24.) But Hardman's motives need not be presumed. Hardman testified that she terminated Johnson for the same incident as Jones (ROA.325, 346), and Jones failed to raise a material fact disputing the City's evidence.

Accordingly, Jones first waived, and then failed to raise a material fact issue, that she established causation, and the Court should affirm the district court's judgment.

## B. The City had non-retaliatory reasons for terminating Jones, and Jones lacks substantial evidence of pretext.

Jones devotes only a single paragraph to pretext in her brief, alleging facts that are inapposite to the City's proffered non-retaliatory reason for terminating Jones. (Appellant's Br. 24). It is undisputed that

---

[8] Jones asserts that she complained that Johnson was harassing her. (Appellant's Br. 23.) Jones failed to exhaust her administrative remedies for discrimination or retaliation regarding harassment. (*See* ROA.274.) Further, Jones failed to plead in her complaint that she was retaliated against for complaining of harassment or pay disparity. (ROA.8-21.)

Jones was responsible for conducting monitoring visits for her contracts and submitting reports. (ROA.639-41, 649-51.) Jones acknowledged that she had these responsibilities and had not performed the required monitoring visits. (ROAA.385-86, 441-44, 452-53, 639-41, 649-51.) It is undisputed that there was an expenditure shortfall for the contract funds for which Jones was responsible, and that the City considered the expenditure shortfall to be a critical issue. (ROA.590.) It is undisputed that Hardman determined that, had Jones performed her monitoring visits as assigned, she should have caught the expenditure shortfall. (ROA.320.) Finally, it is undisputed that Hardman concluded that Jones and Johnson were responsible for the expenditure shortfall. (ROA.324-25.) Hardman testified that she considered Jones and Johnson to be primarily responsible for the expenditure shortfall and discharged them on this basis. (ROA.324-25.)

To show pretext, Jones must show "a conflict in substantial evidence" as to whether the City would have taken these actions but for her protected activity. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). Jones' only response is that Jones was not required to monitor spending levels and that a different department should have

done so. (Appellant's Br. 24.) Even assuming Jones' assertion is true, Jones cannot and does not dispute the evidence that she was responsible for conducting site visits, failed to conduct said visits, and her failure to perform her job responsibilities resulted in a massive expenditure shortfall for the contracts for which she was lead. Besides, "even an incorrect belief that an employee's performance is inadequate constitutes a non-discriminatory reason for discharge." *Little v. Republic Refining Co.*, 924 F.2d 93, 97 (5th Cir. 1991). And there is simply nothing in the record to dispute that Hardman terminated Jones and Johnson solely for performance reasons.

## V.   The district court properly held that the City is entitled to summary judgment on the merits of Jones' ADA claims.

Jones alleges that the City failed to accommodate Jones' various requests for accommodations and discriminated and retaliated against her based on her requests for accommodations. Each claim is addressed in turn.

### A.   Jones cannot raise a fact issue that she established a claim for failure to accommodate.

To establish a failure to accommodate claim, a plaintiff must demonstrate: "(1) the plaintiff is a 'qualified individual with a disability;'

(2) the disability and its consequential limitations were 'known' by the covered employer; and (3) the employer failed to make 'reasonable accommodations' for such known limitations." *Amedee v. Shell Chem., L.P.*, 953 F.3d 831, 837 (5th Cir. 2020) (quoting *Feist v. La., Dep't of Justice, Office of the Attorney Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)). In addition to Jones' failure to exhaust this claim, summary judgment should be affirmed for the City on the alternative grounds that Jones cannot show that she is a qualified individual with a disability or that the City failed to make reasonable accommodations for her known limitations.

### 1.    Jones does not have a disability related to asthma or allergies.

The ADA protects individuals with a "disability," which the ADA defines as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). Jones' physician stated that Jones' "anxiety, depression, tension headaches, [and] allergic rhinitis" imposed "no limitation with regard to activities of daily living." (ROA.903.) Further, Jones' physician testified that Jones did not suffer from asthma during her employment with the City. (ROA.759.) Jones' self-serving and conclusory statement in her declaration that she

"suffered from asthma and was sensitive to sprays" (ROA.880), is insufficient to raise a material disputed fact on this issue in light of her own expert's testimony to the contrary. *See Green v. United Parcel Serv., Inc.*, 847 F. App'x 207, 211 (5th Cir. 2021) (holding that it is not enough to simply have an impairment, but that a plaintiff must "demonstrate that the impairment substantially limits a major life activity"). Jones attempts to refute the City's evidence with inaccurate citations. Dr. Babaian, the same doctor who testified that Jones did not have asthma (ROA.759), stated that she recorded Jones had asthma solely for insurance purposes (ROA.758-59). Dr. Babaian further testified that she had "no recollection" of telling Jones to avoid aerosols or sprays. (ROA.760.)

Jones insists that she is disabled under the ADA because she had an 80% service disability rating from the VA. (Appellant's Br. 26-27.) But Jones misconstrues the City's arguments and the prior holdings, which were specific to Jones' respiratory disabilities. Accordingly, Jones failed to raise a material fact issue that she had a disability based on a respiratory condition.

**2.    Insofar as Jones claims that she could not perform the essential functions of her job unless she worked from home, she was not a qualified individual with a disability under the ADA.**

A qualified individual with a disability under the ADA must be able to "perform the essential functions" of her position with reasonable accommodation. *See* 42 U.S.C. §§ 12111(8), 12112(b)(5)(A). The City demonstrated that Jones, insofar as she required fully remote work as an accommodation, was not a qualified individual with a disability because in-office work was an essential function of her job. (ROA.137-38.) *Credeur v. La. through Off. of Attorney Gen.*, 860 F.3d 785, 793 (5th Cir. 2017) (holding that attorney was not a qualified individual under the ADA if she could not perform in-office work). Jones addresses the issue in a single paragraph of her brief, making the conclusory assertion that "no serious attempt was made to investigate the possibility" that Jones could work from home. (Appellant's Br. 28.) Jones also argues that a co-worker, Crethers, made a statement on Jones' behalf and that employees were permitted to work from home a year later, during the Covid-19 pandemic. (Appellant's Br. 28.)

With respect to Jones' evidence, the statements she cites from herself and Crethers are insufficient to raise an issue of material fact.

Jones testified that she "believe[s] most or all of [her] job duties could have been performed working from home with suitable computer equipment." (ROA.887.) But "[a]n employee's unsupported testimony that she could perform her job functions from home" does not create a genuine dispute of fact to preclude summary judgment. *Credeur*, 860 F.3d at 793. Further, "the statute and regulations indicate that [the courts] must give greatest weight to the employer's judgment." *Credeur*, 860 F.3d at 792 (internal quotation marks omitted).

Crethers similarly speculated that she "believe[d] that working from home would be manageable if medically necessary . . . .," while also stating that some of her job duties "required me to appear in person." (ROA.921.) Not only are these arguments foreclosed by this Court's precedents such as *Credeur*, but "[m]ere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence." *Walker v. SBC Servs., Inc.*, 375 F. Supp. 2d 524, 535 (N.D. Tex. 2005); *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 909, 918 (S.D. Tex. 2015) (party's "conclusory statements that it

'reasonably believes' something are not competent summary judgment evidence and will not satisfy its evidentiary burden").

The only other evidence Jones offers is that, immediately following commencement of the Covid-19 pandemic, staff worked remotely for one month and then commenced hybrid working schedules due to the pandemic. (ROA.1103.) Such evidence does not raise a fact issue because it is wholly irrelevant. The Covid-19 pandemic commenced *after* Jones' termination from the City, as well as after Hardman resigned as the OHS Director. The City's workplace changes in response to a global pandemic, emergency declaration at all levels of government, and the executive orders of Dallas County Judge have no bearing as to whether, prior to the pandemic, Jones could have performed the essential functions of her job from home. The City requests that the Court take judicial notice of the executive orders issued by Dallas County Judge, particularly the March 18, 2020, order, which recognized Covid-19 as a public health emergency as of March 12, 2020, and specifically recommended minimizing exposure in the workplace through social distancing and telecommuting.[9] *See PNC*

---

[9] Dallas County Judge Clay Jenkin's Executive Orders on Covid-19 are publicly available at https://www.dallascounty.org/covid-19/county-judge/jenkins.php (last accessed Jan. 9, 2025.)

*Bank, Nat'l Ass'n v. Ruiz*, No. 22-50584, 2023 WL 3340078, *4 (5th Cir. May 10, 2023).

Moreover, Jones' summary judgment evidence concedes that no OHS employees were permitted to work from home prior to the pandemic, further supporting the City's position. (ROA.921.) Accordingly, because Jones could not perform her essential job functions remotely in 2018 or 2019, the timeframe at issue, the Court should affirm summary judgment on Jones' failure to accommodate claim based on her request to work remotely.

### 3.    The City offered Jones reasonable accommodations, which she rejected.

"An employer that demonstrates good faith efforts to engage in the interactive process and to make a reasonable accommodation is shielded from liability." *Jurach v. Safety Vision, LLC*, 642 F. App'x 313, 318 (5th Cir. 2016) (internal quotation marks omitted). "The appropriate accommodation need not be the employee's preferred accommodation, and the employer is free to choose the less expensive accommodation or the accommodation that is easier for it to provide." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 469 (5th Cir. 2021) (internal quotation marks omitted). "An employer satisfies the requirement if it engages in the

56

process in good faith, even if the employee rejects the reasonable accommodations that are offered." *Jurach v. Safety Vision, LLC*, 72 F. Supp. 3d 698, 709 (S.D. Tex. 2014), *aff'd*, 642 F. App'x at 313 (internal quotation marks omitted).

In November 2018, Jones met with HR Partner Jannis Rusher to discuss her accommodation requests. (ROA.749.) Jones' documented restrictions included not being in a high traffic area, not facing a cement wall, and not being approached from behind. (ROA.749, 762-63.) Rusher reviewed pictures Jones provided of her office set up. Immediately, Rusher suggested Jones have her monitor moved to face a different direction, which would resolve the concerns of Jones facing a wall and being approached from behind. (ROA.749-50.) Although Jones did not deny that she could have her monitor moved, she stated that would not be sufficient because she felt it would still be noisy. (ROA.750.) Based on Jones' documented restrictions, management found a different cubicle for Jones, which was further away from the traffic and water fountain, did not face the fall, and would not have Jones' back to the opening. (ROA.660, 752.) Jones declined the accommodation. (ROA.752.)

Further, even though Jones did not have a disability with respect to her allergies, the City nevertheless accommodated her condition, barring employees from using fragrances in the office. (ROA.303-04, 365-66, 779-80.) The City's emails to staff and "no fragrance policy" constituted a reasonable accommodation. *See Kaufman v. GMAC Mortg. Corp.*, No. 04–CV–5671, 2006 WL 1371185, at *11-13 (E.D. Penn. May 17, 2006) (holding that employer efforts to limit scents in the workplace was a reasonable accommodation, and that, where plaintiff demanded a "scent-free environment," such request was not reasonable, and plaintiff was not a "qualified individual" under the ADA).

Even on appeal, Jones has not addressed this argument by the City, asserting only that she was not granted her *preferred* accommodations.[10] She ignores the City's evidence, including her own testimony, that she was, in fact, offered alternative accommodations, and rejected them, as well as the case law supporting the City's contention that such alternative accommodations were reasonable. Accordingly, summary

---

[10] Jones' assertion that a private office was available at this time is not supported by the record, including the evidence cited by Jones, which makes no mention of a private office. (ROA.1051.)

judgment was proper as to Jones' failure to accommodate claim for this independent reason.

### B. Jones cannot raise a fact issue that she established a claim for disability retaliation.

To establish a prima facie case of retaliation under either the ADA, a plaintiff must show (1) engagement in an activity protected by the ADA, (2) an adverse employment action, and (3) a causal connection between the protected act and the adverse action. *Seaman v. CSPH, Inc.*, 179 F.3d 297, 301 (5th Cir.1999). If a plaintiff can prove their prima facie case for disability retaliation, the burden shifts to the defendant to show a non-retaliatory reason for the alleged adverse employment action. *McDonnell Douglas Corp.*, 411 U.S. at 802. If a defendant satisfies its burden, the plaintiff must then show that the defendant's asserted reason was merely pretext for the real retaliatory purpose. *Id.* at 804-05. Like Title VII retaliation cases, the plaintiff in an ADA retaliation case must ultimately prove that the adverse employment action would not have occurred "but-for" the protected activity, and the plaintiff must reveal a "conflict in substantial evidence on the ultimate issue of retaliation in order to withstand a motion for summary judgment." *Sherrod*, 132 F.3d at 1122.

1.  **Jones cannot establish a prima facie case of retaliation because she cannot demonstrate a causal relationship between her requests for accommodation and her termination.**

In the district court, the City demonstrated that Jones could not establish a causal connection between her requests for accommodations and her termination. (ROA.141-42.) Although Jones waived arguments as to causation for failing to include them in her response to the City's summary judgment motion, she makes two arguments in her brief to this Court: (1) that she "continued" to request accommodations and therefore there was temporal proximity between her protected activity and her termination; and (2) Johnson expressed a negative attitude towards her requests for accommodation. (Appellant's Br. 29-30.) Both arguments lack merit.

With respect to temporal proximity, Jones requested reasonable accommodations on or about November 6, 2018, and the evidence is clear that Hardman, the decision maker, was aware of Jones' request by December 21, 2018. (ROA.782.) The operative date for determining the timing for temporal proximity purposes is when the employer became aware of the protected activity. *See Atkins*, 712 F. App'x at 391; *see also Smithson v. Union Pac. R.R. Co.*, 602 F. Supp.3d 974, 982 (W.D. Tex.

2022) (explaining that an employer standing by a prior denial of a request for accommodation is not a discrete act). Although Jones argues that she "continued" to request accommodations, she cites no authority contradicting the authority that the operative date for determining temporal proximity is when the employer became aware of the requests and does not continue in perpetuity because Jones allegedly continued to urge her requests or suggest alternative accommodations.

Moreover, Jones describes various complaints she made without making any attempt to show that she pled or exhausted claims based on such, that the activities were protected under the ADA, or that the decision makers (Chandler-Hardy and Hardman) were aware of the activities. For example, Jones argues that she sent a request to the City Manager on January 28, 2019. (Appellant's Br. 30.) But Jones fails to mention accommodations in the cited letter. (ROA.911-12.) And Jones' email to the City Manager on May 29, 2019, concerns issues with FMLA, not the ADA. (ROA.913.) Jones does not allege that Hardman was aware of either communication, or Jones' communication to the Texas Workforce Commission. The HR investigation referenced by Jones is likewise based on the FMLA (ROA.1043), and thus Jones' HR complaint

does not constitute protected activity under the ADA. *See St. John v. Sirius Sols., LLLP*, 299 F. App'x 308, 309 (5th Cir. 2008) (protected activity under the ADA is limited to oppos[ing] any act or practice made unlawful by [the "ADA]"). Jones' numerous, previously waived arguments regarding her engaging in protected activity are unpersuasive, as she makes no serious attempt to show that retaliation based on these alleged events is exhausted, that the events qualify as protected activity under the ADA, or that a decision maker was aware of these activities. Therefore, she has not raised a material fact issue on this basis.

Regarding Jones' allegation that Hardman condoned harassment and retaliation (Appellant's Br. 19), that is wholly misleading, as the cited incident has nothing to do with Jones or her requests for accommodation (ROA.1047). Jones' continuing references to Johnson's alleged celebration of Jones' termination are similarly irrelevant, as Johnson was terminated the same day as Jones, for the same incident, and was not a decision maker with respect to Jones' termination.

Accordingly, Jones fails to show that she raised a material fact issue as to causation, and summary judgment should be affirmed for the City regarding her disability retaliation claim.

> **2.    The City had non-retaliatory reasons for terminating Jones, and Jones failed to show substantial evidence of pretext.**

Jones does not refute the City's non-retaliatory reason for her termination, other than to assert that employees in another department should also have caught the mistake, as they were supposed to monitor spending. (Appellant's Br. 31.) Jones' argument that other employees in other departments (with different decision makers) may also have been able to catch the mistake, is not substantial evidence of pretext and, for the reasons articulated in section IV.B, above, the district court's judgment should be affirmed on this additional ground.

> **C.    Jones cannot raise a fact issue that she established a claim for disability discrimination.**

"'To establish a prima facie case of discrimination under the ADA, a plaintiff must prove: (1) he has a disability; (2) he is qualified for the job; and (3) the covered entity made its adverse employment decision because of the party's disability.'" *Clark v. Champion Nat'l Security, Inc.,* 952 F.3d 570, 582 (5th Cir. 2020) (quoting *Moss v. Harris Cnty. Constable*

63

*Precinct One*, 851 F.3d 413, 417 (5th Cir. 2017)). If the plaintiff establishes a prima facie case of discrimination under the ADA, courts then engage in the *McDonnell Douglas* burden-shifting analysis. *Owens v. Calhoun Cnty. Sch. Dist.*, 546 F. App'x 445, 448 (5th Cir. 2013). In addition to Jones' failure to exhaust a claim for disability discrimination, Jones failed to state a prima facie case of disability discrimination because she cannot establish a causal connection between her disability and her termination, and because the City had non-discriminatory reasons for terminating Jones' employment, which Jones has not shown to be pretextual.

### 1.    Jones cannot establish a prima facie case of discrimination.

The magistrate judge concluded, and district court accepted, that Jones could not raise a material fact issue as to causation because the undisputed evidence demonstrated that Chandler-Hardy and Hardman, the decision makers, were unaware that Jones had a disability. (ROA.1174, 1262.) Although Jones waived argument on causation in her response and, therefore, it should not be considered, because Jones raises the issue on appeal, the City address the substance.

Jones' sole argument is that Chandler-Hardy and Hardman must have known Jones had a disability because she complained to Chandler-Hardy about a toxic pesticide being sprayed in her workspace, because she took family medical leave, and because Hardman reviewed an investigation that contained an allegation that Jones was upset about a letter of counseling that referenced absences she believed were covered by family medical leave. (Appellant's Br. 32.) Jones' extrapolations that complaining about a toxic pesticide and taking family medical leave raise a material fact issue that the decision makers were aware she had a disability are not supported by the law. "[A]n employee who requests leave does not clearly communicate to her employer that she is disabled and desires an accommodation." *Acker v. Gen. Motors L.L.C.*, 853 F.3d 784, 791 (5th Cir. 2017) (quoting *Capps v. Mondelēz Global LLC*, 147 F. Supp.3d 327, 340–41 (E.D. Penn. 2015)). Simply put, complaining about a toxic pesticide being sprayed, requesting family medical leave, and complaining about issues related to family medical leave, do not put an employer on notice of a disability. *Id.* As such, Jones has not raised a fact issue disputing the City's evidence that neither decision maker was aware Jones had a disability.

**2.** **The City had non-discriminatory reasons for terminating Jones, and Jones lacks substantial evidence of pretext.**

Jones failed to address the City's legitimate reason for her termination with respect to this claim in her brief, other than to vaguely state that she "incorporates by reference the additional information provided in the preceding sections." (Appellant's Br. 32.) "An appellant who fails to properly brief an issue before this court waives it." *Windhauser*, 360 F. App'x at 565. Nevertheless, for the same reasons articulated above, Jones has failed to show a substantial conflict in the evidence, as required to show pretext at this stage.

## CONCLUSION

For these reasons, the Court should affirm the district court's judgment.

Respectfully submitted,

TAMMY L. PALOMINO
City Attorney

JENNIFER C. HUGGARD
Chief of Litigation

NICHOLAS D. PALMER
Chief of Appellate Section

/s/Sarah E. Mendola
SARAH E. MENDOLA
Texas Bar No. 24057030
sarah.mendola@dallas.gov

JAMES PEACOCK
Texas Bar No. 24110811
james.peacock@dallas.gov

CITY ATTORNEY'S OFFICE
1500 Marilla Street, Room 7DN
Dallas, Texas 75201
Telephone: 214-670-3519
Telecopier: 214-670-0622


ATTORNEYS FOR APPELLEE

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Appellate Procedure 25(d) and Fifth Circuit Rule 25.2, I hereby certify that on January 10, 2025, the foregoing document was electronically filed with the Clerk of the Court for the United States Court of Appeals for the Fifth Circuit, using the electronic filing system of the Court.  I further certify that I have complied with the privacy and redaction requirements of Federal Rule of Appellate Procedure 25(a)(5) and Fifth Circuit Rule 25.2.13; that the electronic submission is an exact copy of the paper document; and that the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

Additionally, on January 10, 2025, a true and correct copy of the foregoing document was served via ECF electronic notice through the Court's Notice of Docket Activity upon John Crouch, counsel for Appellant, who has consented in writing to accept such notice as service of this document by electronic means.

/s/Sarah E. Mendola
Attorney for City of Dallas

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitation,
Typeface requirements and Type Style Requirements

1.  This brief complies with the type volume limitation of Fed. R. App.
    P. 32(a)(7)(B) because:

    ☐   this brief contains 12,946 words, excluding the parts of the
        brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App.
    P. 32(a)(5) and the type style requirements of Fed. R. App. P.
    32(a)(6) because:

    ☐   this brief has been prepared in a proportionally spaced
        typeface using Microsoft Word for Microsoft 365 MSO in 14-
        point Century Schoolbook.


                                    /s/Sarah Mendola
                                    Attorney for City of Dallas


Dated:  January 10, 2025